UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1874

COMBINED MANAGEMENT, INC.,

Plaintiff, Appellant,

v.

SUPERINTENDENT OF THE BUREAU OF
INSURANCE OF THE STATE OF MAINE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Aldrich and Cyr,

Circuit Judges.

Richard G. Moon with whom Ralph A. Dyer was on brief for

appellant.
James M. Bowie, Assistant Attorney General, Department of

the Attorney General, with whom Michael E. Carpenter, Attorney

General, Linda M. Pistner, Director, Regulatory Agency Unit,

Department of the Attorney General, and Thomas D. Warren,

Director, Litigation Unit, Department of the Attorney General,
were on brief for appellee.
Robert Abrams, Attorney General of the State of New York,

Jerry Boone, Solicitor General, Jane Lauer Barker, Assistant

Attorney General in Charge of Labor Bureau, and Jennifer S.

Brand, Assistant Attorney General, on brief for State of New

York, et al., amici curiae.
John M. Rea, Chief Counsel, Vanessa L. Holton, Senior

Counsel, James D. Fisher, Staff Counsel, Gary J. O'Mara, Staff

Counsel, Department of Industrial Relations, and Lloyd Aubry,

Jr., Director, Department of Industrial Relations, State of

California, on brief for State of California, amicus curiae.
Marsha S. Berzon, Michael Rubin, Indira Talwani, Altshuler,

Berzon, Nussbaum, and Berzon & Rubin on brief for the American

Federation of Labor and Congress of Industrial Organizations and
the International Ladies' Garment Workers' Union, AFL-CIO, amici
curiae.
Thomas S. Williamson, Jr., Solicitor of Labor, Marc I.

Machiz, Associate Solicitor, Plan Benefits Security Division,

Karen L. Handorf, Counsel for Special Litigation, Plan Benefits

Security Division, and Elizabeth A. Goodman, Trial Attorney, Plan

Benefits Security Division, U.S. Department of Labor, on brief
for the Secretary of Labor, amicus curiae.
Allan M. Muir and Pierce, Atwood, Scribner, Allen, Smith &

Lancaster on brief for Maine Employers' Mutual Insurance Company,

amicus curiae.
Michael M. Sykes, General Counsel, Oklahoma Department of

Labor, and Kayla A. Bower, Attorney, Oklahoma Department of

Labor, on brief for State of Oklahoma ex rel. Dave Renfro,
Commissioner of Labor, Oklahoma Department of Labor, amicus
curiae.

April 22, 1994

-2-

TORRUELLA, Circuit Judge. Plaintiff-Appellant,

Combined Management, Inc. ("CMI"), brought an action to enjoin

Brian K. Atchinson, in his representative capacity as

Superintendent of the Bureau of Insurance for the State of Maine

(the "Superintendent"), from enforcing certain provisions of

Maine's workers' compensation statute. 39 M.R.S.A. 101 et seq.

CMI claimed that because CMI provides workers' compensation

benefits through a welfare benefit plan that is covered by the

Employee Retirement Income Security Act ("ERISA"), the

Superintendent's efforts to apply the workers' compensation law

to CMI are preempted by ERISA 514(a) of ERISA, 29 U.S.C.

1144(a). The district court dismissed CMI's complaint, finding

that ERISA did not preempt Maine law. We affirm.

I. BACKGROUND

CMI is an employee leasing company that leases the

services of its workers' to a variety of businesses on a long-

term basis. CMI provides employee benefits, including

occupational injury and disability benefits, to the leased

employees through a subscription to the International Association

of Entrepreneurs of America Welfare Benefit Plan (the "IAEA

Plan"). The workers' compensation portion of the IAEA Plan is

not separately insured or administered.

Maine state law, 32 M.R.S.A. 14055(1)(B), mandates

that employee leasing companies or their client businesses must

arrange for the payment of workers' compensation benefits in

accordance with the requirements of the Maine Workers'

-3-

Compensation Act, 39 M.R.S.A. 101 et seq. The Workers'

Compensation Act requires that all employers provide workers'

compensation either through an insurance carrier authorized by

the state or through a self-insurance plan that meets the state's

qualifications. 39-A M.R.S.A. 403.21 Maine requires

authorized insurance carriers and self-insurers to provide

1 39-A M.R.S.A. 403 provides in part:

An employer subject to [the Workers'
Compensation] Act shall secure
compensation and other benefits to the
employer's employees in one or more of
the ways described in this section. . . .

1. INSURING UNDER WORKERS' COMPENSATION
INSURANCE POLICY. The employer may
comply with this section by insuring and
keeping insured the payment of such
compensation and other benefits under a
workers' compensation insurance policy. .
. .

2. PILOT PROJECTS. [The employer may
participate in an authorized pilot
project.] . . .

3. PROOF OF SOLVENCY AND FINANCIAL
ABILITY TO PAY; TRUST. The employer may
comply with this section by furnishing
satisfactory proof to the Superintendent
of Insurance of solvency and financial
ability to pay the compensation and
benefits, and depositing cash,
satisfactory securities, irrevocable
standby letters of credit issued by a
qualified financial institution or a
surety bond with the board, in such sum
as the superintendent may determine . . .
.

4. GROUP SELF-INSURERS; APPLICATION.
Except for the provision relating to
individual public employer self-insurers,
subsection 3 is equally applicable in all
respects to group self-insurers.

-4-

evidence of their financial solvency and meet certain funding

requirements. See, e.g., 24-A M.R.S.A. 221-A, 410, 4431-4452;

39-A M.R.S.A. 403, 404.

On January 29, 1993, the Maine Bureau of Insurance sent

a letter to CMI stating that CMI's subscription to the IAEA Plan

did not satisfy its obligation under state law to provide

workers' compensation benefits through one of the methods

authorized by 39-A M.R.S.A. 403. The letter did not

"constitute a formal order or action of the Superintendent" but

it did warn that failure of CMI to comply with the law could

prompt some action in the future.

One month later, CMI filed suit to enjoin the

Superintendent from requiring CMI to obtain separate workers'

compensation insurance or to establish a qualified program of

self-insurance pursuant to 39-A M.R.S.A. 403. CMI also sought

a declaratory judgment stating that any enforcement of 39-A

M.R.S.A. 403 against CMI is preempted by ERISA.

In response to CMI's request for a preliminary

injunction, the magistrate judge suggested that he first address

the issue of whether ERISA preempted Maine's workers'

compensation laws. Although CMI would have to establish that its

benefit plan, the IAEA Plan, was an ERISA covered plan under 29

U.S.C. 1002(3) and 1002(37)(A) before it could invoke the

protections of ERISA's preemption provision, the magistrate noted

that determining the status of the IAEA Plan would involve a fact

intensive inquiry requiring additional discovery. Instead, with

-5-

the agreement of the parties, the magistrate ordered that the

preemption issue be addressed first on the understanding that if

he found ERISA did not preempt Maine law, he would then dismiss

the case. Thus, for purposes of this threshold question only,

the IAEA Plan is assumed to be a valid ERISA benefit plan.

On June 15, 1993, the magistrate recommended a denial

of the requested preliminary injunction and a dismissal of the

case on the grounds that ERISA did not preempt Maine's workers'

compensation law. The magistrate found that the workers'

compensation law did not "relate to" the IAEA Plan offered by CMI

because the law is a matter of general application affecting all

private employers, whether or not they have adopted ERISA plans,

and because the law does not affect the structure,

administration, or type of benefits provided by any ERISA plan.

On August 2, 1993, the district court affirmed and adopted the

magistrate's recommended decision. CMI now appeals this

decision.

II. ERISA PREEMPTION

ERISA preempts state laws that "relate to" an ERISA

covered welfare benefit plan. ERISA 514(a), 29 U.S.C.

1144(a).2 A state law "relates to" an ERISA covered plan "'if

2 Section 514(a) provides that the provisions of ERISA:

shall supersede any and all State laws
insofar as they may now or hereafter
relate to any employee benefit plan
described in section 1003(a) of this
title and not exempt under section
1003(b) of this title.

-6-

it has a connection with or reference to such a plan.'" District

of Columbia v. Greater Washington Bd. of Trade, 113 S. Ct. 580,

583 (1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85,

96-97 (1983)); see also Ingersoll-Rand Co. v. McClendon, 498 U.S.

133, 139 (1990). A state law may "relate to" a benefit plan

"even if the law is not specifically designed to affect such

plans, or the effect is only indirect." Greater Washington Bd.

of Trade, 113 S. Ct. at 583 (quoting Ingersoll-Rand, 498 U.S. at

139). However, preemption will not occur where the state law has

only a "tenuous, remote, or peripheral" connection with covered

plans, "as is the case with many laws of general applicability."

Id. at 583 n.1 (citing Shaw, 463 U.S. at 100 n.21); see also

Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825,

830-38 (1988).

State laws that do not "relate to" an ERISA covered

plan but instead "relate to" a benefit plan established solely to

comply with state workers' compensation laws are not preempted by

ERISA. Section 514(a); ERISA 4(b)(3), 29 U.S.C.

1003(b)(3).3 As Maine's workers' compensation law falls within

29 U.S.C. 1144(a).

3 Section 4(b)(3) provides that ERISA shall not apply to any
employee benefit plan if:

such plan is maintained solely for the
purpose of complying with applicable
workmen's compensation laws or
unemployment compensation or disability
insurance laws.

29 U.S.C. 1003(b)(3).

-7-

this special exemption, we affirm the district court's

determination that ERISA does not preempt any efforts by the

Superintendent to require CMI to provide workers' compensation

benefits through an authorized insurance provider or qualified

self-insurance. See Employee Staffing Servs., Inc. v. Aubry, No.

93-15482, 1994 WL 109731 (9th Cir. 1994) (holding that

California's workers' compensation law, which is quite similar to

Maine's, is not preempted by ERISA).

A. The Workers' Compensation Exemption

Congress explicitly exempted state workers'

compensation schemes from ERISA's purview, see H.R. Rep. No. 93-

1280, 93d Cong., 2d Sess. 383 (1974), reprinted in 1974 U.S. Code

Cong. & Admin. News 5038, 5162, leaving intact the states'

traditional regulation and oversight of this specialized system

of insurance. See also 28 U.S.C. 1445(c) (forbidding removal

of workers' compensation benefits claims to federal court). In

the statute, 4(b)(3) excludes benefit plans created solely to

comply with state workers' compensation statutes from coverage

under ERISA, and 514(a) excludes from preemption state laws

that relate to those plans described in 4(b). 29 U.S.C.

1003(b) and 1144(a). Some state workers' compensation laws might

"relate to" ERISA covered benefit plans, instead of, or in

addition to, plans exempt under 4(b)(3), and thus fall under

the broad sweep of ERISA's preemption clause. Greater Washington

Bd. of Trade, 113 S. Ct. at 584-85. Laws which relate only to

welfare benefit plans exempt from ERISA's coverage, however, fit

-8-

safely under the umbrella of 4(b)'s exemption. Id.

In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 106-09

(1983), the Supreme Court held in part that a New York law

mandating the provision of certain disability benefits to

employees was exempt from preemption under ERISA pursuant to

4(b)(3), even though employers could provide the required

benefits through their ERISA covered plans. Because disability

benefit laws are exempted from ERISA's coverage by the same

provision exempting workers' compensation laws, 4(b)(3), 29

U.S.C. 1003(b)(3), the Shaw decision applies directly to this

case. The Supreme Court found in Shaw that:

A State may require an employer to
maintain a disability plan complying with
state law as a separate administrative
unit. Such a plan would be exempt under
4(b)(3). . . . [W]hile the State may
not require an employer to alter its
ERISA plan, it may force the employer to
choose between providing disability
benefits in a separately administered
plan and including the state-mandated
benefits in its ERISA plan. If the State
is not satisfied that the ERISA plan
comports with the requirements of its
disability insurance law, it may compel
the employer to maintain a separate plan
that does comply.

Id. at 108. See also Greater Washington Bd. of Trade, 113 S. Ct.

at 584-85 (reaffirming the holding in Shaw).

The Supreme Court also noted that although the

exemption in 4(b)(3) applies only to separately administered

disability plans maintained solely to comply with state law, and

does not include ERISA covered benefit plans that provide a

combination of exempt and non-exempt benefits, employers are not:

-9-

completely free to circumvent the
Disability Benefits Law by adopting plans
that combine disability benefits inferior
to those required by that law with other
types of benefits. Congress surely did
not intend, at the same time it preserved
the role of state disability laws, to
make enforcement of those laws
impossible.

Shaw, 463 U.S. at 108.

Maine's workers' compensation law falls squarely within

the dictates of Shaw. 29-A M.S.R.A. 403 mandates that

employers provide workers' compensation by purchasing approved

insurance or by establishing an approved self-insurance plan.

This is precisely what the Supreme Court contemplated when it

found that states "may require an employer to maintain a [

4(b)(3) exempt] plan as a separate administrative unit." Id.;

accord Greater Washington Bd. of Trade, 113 S. Ct. at 584-85. In

the present case, the Superintendent expressed an opinion that

CMI's subscription to the IAEA Plan does not satisfy the

requirements of Maine's law. Further efforts to ensure CMI's

compliance with the law would clearly constitute an act to

"compel the employer to maintain a separate plan that does

comply" with the workers' compensation law, an act which is

explicitly approved of by Shaw. Shaw, 463 U.S. at 108.

Even though CMI provides workers' compensation benefits

through the IAEA Plan, which we assumed is an ERISA covered plan,

Maine's law does not require, and the Superintendent does not

request, that CMI alter the IAEA Plan in any way or provide or

-10-

not provide certain benefits through the IAEA Plan. In fact, the

Maine law imposes no limitations or requirements, regulatory or

otherwise, on the IAEA Plan or on any ERISA covered plan.

Consequently, it does not "relate to" an ERISA plan such that

preemption is triggered. In such a situation, CMI cannot don the

mantle of ERISA preemption simply by including workers'

compensation benefits in its welfare benefit plan and thereby

escape the requirements of Maine's law. See Shaw, 463 U.S. at

108; Foust v. City Ins. Co., 704 F. Supp. 752, 754 (W.D.Tex.

1989).

CMI misinterprets Shaw to hold that states can only

require employers to provide a specified level or package of

workers' compensation benefits and cannot otherwise interfere

with plan administration through provisions like the funding and

solvency requirements established in 39-A M.S.R.A. 403. CMI

would thus limit the ERISA exemption under 4(b)(3) to laws

mandating benefit outputs instead of laws establishing separate

benefit plans. As a corollary to this claim, CMI contends that

Shaw requires states to give employers a choice of providing the

specified benefits in its own ERISA plan or in a state mandated

benefits plan. CMI maintains that because ERISA allows welfare

benefit plans to provide workers' compensation benefits, refusing

to give CMI the option of providing such benefits through the

IAEA plan would effectively bar what ERISA permits. See Alessi

v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524 (1981) (finding

state law that barred one method of calculating benefits

-11-

permitted by ERISA to be preempted).

CMI cites several cases for the proposition that states

may not force employers to separate workers' compensation

benefits from their fully integrated ERISA plans. Id. at 521-26;

PPG Industries Pension Plan A v. Crews, 902 F.2d 1148, 1150-51

(4th Cir. 1990). CMI extends this proposition to argue that

states are also prohibited from forcing employers to set up

separate workers' compensation plans.

Although ERISA preempts state laws that prohibit an

ERISA covered plan from providing certain benefits or from

calculating benefits in a certain way (including laws that would

force a plan to separate out a portion of its existing coverage),

we find no support in Shaw, or any other case, for CMI's

proposition that ERISA preempts state laws that force employers

to adopt a separately administered workers' compensation benefits

plan. On the contrary, 4(b)(3) and Shaw itself expressly

permit states to do just that. Shaw, 463 U.S. at 108. Shaw does

not require states to give employers the option of complying with

state law by providing workers' compensation benefits in their

ERISA covered plans. Instead, Shaw merely states that the

existence of such an option does not automatically result in

preemption, id. at 108; it certainly does not suggest the

converse proposition, that an option is required for the

4(b)(3) exemption to apply. See Barker v. Pick N Pull Auto

Dismantlers, Inc., 819 F. Supp. 889, 891-96 (E.D.Cal. 1993)

(rejecting the identical argument that Shaw requires states to

-12-

offer employers the option of providing workers' compensation

through their ERISA plans).4

Likewise, Shaw does not limit the exemption under

4(b) (3) to state laws mandating a specific level or package of

benefits as opposed to laws mandating solvency and funding

requirements. There is no basis for this distinction in

4(b)(3) or in Shaw. Additionally, the language of those two

authorities indicates that the case for exemption of solvency

requirements is even stronger than the case for exemption of

benefit requirements. See 4(b) (3), 29 U.S.C. 1003(b)(3)

(stating that the provisions of ERISA shall not apply to any

employee benefit plan if "such plan is maintained solely for the

purpose of complying with applicable workmen's compensation laws)

(emphasis added); Shaw, 463 U.S. at 108 (stating that states can

require employers to comply with the "requirements" of its law by

setting up "a separate administrative unit"); see also Barker,

819 F. Supp. at 895 (finding that "Shaw does not address

'benefits' but speaks only of 'requirements,'" and that a state's

concern about the solvency of a workers' compensation plan is "of

equal stature as any concern as to the level of benefits."). If

anything, state laws mandating specific benefits from an ERISA

covered plan are more likely to "relate to" that ERISA plan than

4 We note that this case differs from our recent decision in
Simas v. Quaker Fabric Corp., 6 F.3d 849 (1st Cir. 1993), where

we held that states cannot mandate the establishment of an ERISA
covered plan. Id. That holding does not apply to state workers'

compensation laws such as Maine's which mandate the establishment
of exempt, non-ERISA covered plans.

-13-

laws which merely require the creation of an ERISA-exempt plan

and which make no demands on the ERISA covered plan itself.

Thus, the instant case presents an even clearer application of

4(b)(3)'s exemption than does Shaw.

Maine's law does not bar what ERISA permits. CMI

remains free to provide the existing workers' compensation

benefits to its employees and to integrate such benefits with the

rest of its ERISA plan benefits. We are not presented in this

case with a state workers' compensation law that prohibits ERISA

covered plans from calculating pension benefits in a certain way,

see Alessi, 451 U.S. at 521-26 (finding that ERISA preempted New

Jersey law that prohibited ERISA plans from offsetting pension

benefits by amounts awarded for workers' compensation); PPG

Industries, 902 F.2d at 1150-51 (finding preemption of West

Virginia law that prohibited an employer from deducting the

amount of pension benefits previously paid to a retiree from the

retiree's subsequent workers' compensation award), or a law that

specifically refers to ERISA covered benefit plans in order to

determine workers' compensation benefits, see Greater Washington

Bd. of Trade, 113 S. Ct. at 583-85 (holding that ERISA preempted

District of Columbia law requiring that employers who provide

health insurance coverage for their employees under an ERISA plan

must provide equivalent health insurance coverage for injured

employees eligible for workers' compensation). These cases cited

by CMI in support of its misguided interpretation of Shaw found

preemption for reasons that do not apply to this case. We

-14-

therefore find that a state law that requires employers to

operate a separately administered workers' compensation benefit

plan is not preempted by ERISA.

B. Does Maine's Law Nevertheless "Relate To" the IAEA Plan?

CMI further argues that Maine's workers' compensation

law relates to an ERISA plan, and thus is preempted, because the

law affects the cost of providing ERISA benefits to its

employees. Specifically, CMI alleges that if it is forced to

adopt a separate workers' compensation plan, the burdens of

duplicate administration and the higher cost of separate workers'

compensation benefits provided outside of the integrated IAEA

Plan will have a significant economic impact on CMI and render

CMI unable to afford the existing level of benefits now offered

through the IAEA Plan. According to CMI, a state law that

creates a significant economic impact on an ERISA plan, without

more, sufficiently "relates to" the plan and is therefore

preempted. E-Systems, Inc. v. Pogue, 929 F.2d 1100, 1103 (5th

Cir.), cert. denied, 112 S. Ct. 585 (1991); Travelers Ins. Co. v.

Cuomo, 813 F. Supp. 996, 1002-06 (S.D.N.Y. 1993).5

To begin with, we decline to address whether a

5 As CMI points out, Travelers cites FMC Corp. v. Holliday, 498

U.S. 52, 58-60 (1990), for the proposition that state laws that
increase plan costs are preempted. Travelers, 813 F. Supp. at

1006. FMC Corp. v. Holliday makes no mention of state laws that

merely impose additional costs. Instead, the Supreme Court found
that state laws interfering with an ERISA plan's calculation of
benefits, in that case through a state antisubrogation law, was
preempted. FMC Corp., 498 U.S. at 58-60. Although we need not

decide the issue in this case, the question of whether increased
costs alone can trigger preemption is far from settled.

-15-

significant economic impact on an ERISA covered plan may be

sufficient by itself to trigger preemption because CMI's argument

fails regardless of how that issue is resolved. The argument

fails for two reasons. First, CMI's claim is at odds with Shaw

and Greater Washington Bd. of Trade, in which the Supreme Court

explicitly contemplated state laws requiring the separate

administration of workers' compensation plans without "relating

to" existing ERISA plans. Greater Washington Bd. of Trade, 113

S. Ct. at 584-85; Shaw, 463 U.S. at 108.

Second, Maine's law, while having an economic impact on

CMI, does not have an economic impact on the IAEA Plan itself.

Clearly, any law that increases a company's cost of doing

business can be said to affect that business's ability to provide

benefits under its welfare benefit plan. This is not the same,

however, as imposing burdens on the welfare benefit plan itself.

The increased cost or administrative burdens imposed by the state

law must have some connection to the covered ERISA plan before

the preemption analysis can come into play. See United Wire,

Metal and Machine Health & Welfare Fund, v. Morristown Mem.

Hosp., 995 F.2d 1181, 1193 (3d Cir. 1993) ("Where there is no

direct nexus between a state statute and ERISA plans, no effect

on the manner of such plans' conducting business or their ability

to operate in interstate commerce, statues have been upheld

despite the fact that they may have the indirect ultimate effect

of increasing plan costs.").

In requiring CMI to provide separate coverage for

-16-

workers' compensation, Maine does not increase the operational

expenses or input costs of the IAEA Plan,6 nor does it impose

any additional administrative burdens, benefit requirements, or

other obligations on the IAEA Plan. Maine's law may increase

CMI's cost of doing business, but it does not affect the IAEA

Plan's cost of providing benefits or costs of administration.

Should CMI choose voluntarily to change its coverage under the

IAEA Plan in response to Maine's law, we consider such a decision

to constitute, at most, an effect of the law that is too

"tenuous" and "remote" to warrant preemption. See Employee

Staffing Servs., Inc. v. Aubry, No. C-92-4096, 1993 WL 83310

(N.D.Cal. Mar. 17, 1993), aff'd, No. 93-15482, 1994 WL 109731

(9th Cir. 1994); cf. Mackey v. Lanier Collection Agency & Serv.,

Inc., 486 U.S. 825, 831-32 (1988) (finding generally applicable

state garnishment law did not "relate to" ERISA covered plans

even though the law might burden the administration of such

plans); Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 145-46 (2d

Cir.), cert. denied, 493 U.S. 811 (1989) (finding state escheat

law did not "relate to" ERISA plans and noting that ERISA does

not preempt many laws that have a minimal, indirect impact on

6 In contrast, two cases that defendant relies upon, E-Systems

and Travelers, involve laws that increase the costs of plan

operation. See E-Systems, 929 F.2d at 1103 (finding that because

the state tax in that case was collected from an ERISA covered
plan, the "cost of the plan must therefore increase"); Travelers,

813 F. Supp. at 1003 (finding "little doubt that the Surcharges
at issue will have a significant effect on the commercial
insurers and HMOs which do or could provide coverage for ERISA
plans and thus lead, at least indirectly, to an increase in plan
costs") (footnote omitted).

-17-

plan administration); Martori Bros. Distributors v. James-

Massengale, 781 F.2d 1349, 1358-59 (9th Cir.), cert. denied, 479

U.S. 1018 (1986) (finding state unfair labor practices statute

that required employers to pay damages based in part on fringe

benefits employees would have received if employers had bargained

in good faith did not "relate to" an ERISA plan). We find

therefore that Maine's law does not "relate to" an ERISA covered

plan and is not thereby preempted.

Accordingly, the order of the district court is

affirmed.

-18-