Ben L. BARKER, Department of Industrial Relations, intervenor, Plaintiffs,

v.

PICK N PULL AUTO DISMANTLERS, INC., Employers Resource Management, Inc., Defendants.

Arlette Faye GOMES, Department of Industrial Relations, intervenor, Plaintiffs,

v.

PICK N PULL AUTO PARTS, INC., Employers Resource Management, Inc., intervenor, Defendants.

Civ. Nos. S–91–1695, S–92–1722.

United States District Court, E.D. California.

March 18, 1993.

As Amended April 22, 1993.

Gary O'Mara, Counsel, James D. Fisher, Counsel, Vanessa L. Holton, Sr. Counsel, John Martin Rea, Chief Counsel, Calif. Dept. of Indus. Relations, San Francisco, CA, for intervenors Mark Ashcroft, Lloyd Aubry and Victoria Bradshaw.

Elliot D. Pearl, Sacramento, CA, for Ben Barker/plaintiff.

Allan J. Graf, Farmer & Ridley Los Angeles, CA, for Pick and Pull Auto Parts/defendant.

H. Thomas Cadell, Chief Counsel, Div. of Labor Standards Enforcement, CA, for California Dept. of Indus. Relations/plaintiff.

Alvin R. Webber, Stockton, CA, for Arlette Gomes/plaintiff.

Terry Fenucane, Farmer & Ridley, Los Angeles, CA, for Pick and Pull Auto Parts/defendant.

Daniel Lundgren, Atty. Gen., George Spanos, Deputy Atty. Gen., Sacramento, CA, for Dept. of Ins., State of Cal.

## MEMORANDUM OF DECISION AND ORDER

LEVI, District Judge.

Plaintiffs Barker and Gomes move to remand their respective actions to state court. Both cases pose the question of whether the State of California may insist that employers provide a separate workers' compensation plan, conforming to certain standards, or

whether such a rule violates the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

## I

Barker and Gomes were injured in separate work-related accidents. At the time of their injuries, their employers, defendants Pick N Pull Auto Parts and Pick N Pull Auto Dismantlers, were not in compliance with California workers' compensation law, which requires an employer to either purchase insurance from an authorized carrier or to obtain a certificate of self-insurance.[1] Instead, the employers subscribed to an employee benefit plan administered by defendant-intervenor Employers Resource Management Company, Inc. ("ERM"). The ERM plan provided occupational injury benefits along with other health, hospital and death benefits. Both Barker and Gomes were enrolled in this plan. ERM claims its plan is an "employee welfare management plan" subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

On November 14, 1991, Barker filed a common law negligence action in Sacramento Superior Court against Pick N Pull under California Labor Code § 3706.[2] On September 20, 1992, Gomes filed an "Application for Adjudication of Claim" with the Workers' Compensation Appeals Board. Defendants removed both cases to this court on the basis of the complete pre-emption doctrine embodied in ERISA. *See Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Barker and Gomes, and the California Department of Industrial Relations (plaintiff-intervenor in both cases), now move to remand. They contend that ERISA exempts from its scope the State's regulation of separately administered workers' compensation plans and thus that these actions, based on state law, are not pre-empted by ERISA. Absent such pre-emption, the court lacks jurisdiction. The issues raised by the motions are of considerable importance to the State's continued ability to regulate workers' compensation programs.

## II

■ As a general matter, a federal defense, including the defense of pre-emption, offered to defeat a state cause of action, "does not appear on the face of a well-pleaded complaint, and, therefore does not authorize removal to federal court." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In actions relating to ERISA covered plans, however, in reliance upon Congress' intention to completely pre-empt the field, the Supreme Court has found a broader basis for jurisdiction than the "well pleaded complaint" rule. Under the complete pre-emption doctrine, the Court will "recharacterize a state law complaint displaced by [ERISA] as an action arising under federal law." *See Taylor*, 481 U.S. at 66, 107 S.Ct. at 1547. Thus, the assertion of a defense of pre-emption under ERISA may provide a basis for jurisdiction if the state law cause of action is pre-empted and displaced by ERISA. *See Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (no removal if state action pre-empted by ERISA but no cause of action provided by ERISA); *Allstate Insurance Co. v. The 65 Security Plan*, 879 F.2d 90, 93 (3rd Cir.1989).

---

1. California Labor Code § 3700 provides in part:
   Every employer except the state shall secure the payment of compensation in one or more of the following ways:
   (a) By being insured against liability to pay compensation in one or more insurers duly authorized to write compensation insurance in this state.
   (b) By securing from the Director of Industrial Relations a certificate of consent to self-insure, which may be given upon furnishing proof satisfactory to the Director of Industrial Relations of ability to self-insure and to pay any compensation that may become due to his employees.
   California Labor Code §§ 3700(a), (b) (West 1989).

2. Section 3706 provides:
   If any employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages, as if this division did not apply.
   California Labor Code § 3706 (West 1989).

In this case the critical question is whether ERISA pre-empts the State's regulatory scheme for workers' compensation such that defendants may provide such benefits through a multi-benefit ERISA plan without complying with all state laws governing the workers' compensation insurance provider. As explained below, the court finds that Barker's and Gomes' state law claims are not pre-empted by ERISA.[3]

### III

■ Section 514(a) of ERISA, codified at 29 U.S.C. § 1144(a), pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) of this title and not exempt under section 4(b) of this title." Under section 4(a), 29 U.S.C. § 1003(a), ERISA applies to any employee benefit plan "established or maintained ... by any employer engaged in commerce or in any industry or activity affecting commerce." ERISA defines "employee benefit plan" to include "benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1).[4] Section 4(b)(3) of ERISA, 29 U.S.C. § 1003(b)(3), in relevant part exempts from ERISA any employee benefit plan "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation laws or disability insurance laws."

The motions to remand require a consideration of the scope of the exemption for plans "maintained solely for the purpose of complying with applicable workmen's compensation laws," and the degree to which the states, through this exemption, may regulate employers that offer such benefits through multi-benefit plans. Plaintiffs argue that to further its regulatory objectives the State may require an employer to provide workers' compensation benefits in a plan maintained

solely for that purpose. By definition such a plan is exempt from ERISA and its broad pre-empting effect and leaves the State free to impose its workers' compensation scheme and requirements on the exempt plan. Plaintiffs rely on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 108, 103 S.Ct. 2890, 2905, 77 L.Ed.2d 490 (1983), which suggests that a State "may require" employers to maintain separate plans. Defendants contend that the State lacks authority to command an employer to establish a separate workers' compensation plan unless the employer's plan offers inadequate benefits. Rather, the State must permit an employer to offer the benefits through a multi-benefit plan covered by ERISA because ERISA explicitly permits such benefits to be offered in a covered plan. Defendants argue that the State's requirement of a separate plan forbids what ERISA permits and therefore must be pre-empted as "relating to" an ERISA covered plan. Defendants contend that the exemption in section 1003(b) only applies if the *employer* chooses to provide workers' compensation benefits in a plan restricted to that purpose and that the State is powerless to insist on such a restriction unless the multi-benefit plan offers workers' compensation benefits inferior to what is required by state law.

The dispute grows out of an ambiguity in the statutory language and scheme. ERISA has broad pre-emptive effect as to any state law that "relates to" employee benefit plans, 29 U.S.C. § 1144; it permits employers to offer multi-benefit plans that include workers' compensation benefits, 29 U.S.C. §§ 1002(1)(B) and 186(c)(5)(A); and it excludes from pre-emption plans that are maintained solely to provide workers' compensation benefits, 29 U.S.C. § 1003(b)(3). May the state insist that an employer provide workers' compensation plans in a plan "main-

---

3. In their briefs, the parties raise three other issues relevant to establishing the court's jurisdiction over this matter: (1) whether the ERM plan is a "plan" under ERISA; (2) whether plaintiffs have an ERISA cause of action; and (3) whether 28 U.S.C. § 1445 prohibits removal of this case. Because no pre-emption exists, resolution of these other issues is unnecessary to the disposition of this motion.

4. ERISA also includes in the statutory definition of plan, "any benefit described in Section 302(c) of the Labor Management Relations Act, 1947." Section 302(c)(5)(A) of the LMRA includes benefits for occupational injury or illness as benefits that may be provided by an employer in an employee benefit plan. *See* 29 U.S.C. § 186(c)(5)(A) (compensation for injury or illness resulting from occupational activity).

tained solely" for that purpose—and therefore exempt from ERISA pre-emption—or is such a requirement itself pre-empted as "relat[ing] to" employee benefit plans?

## IV

The California workers' compensation scheme requires all employers to offer a certain level of benefits—termed "compensation"—and to secure payment of such compensation in one of two ways: (1) by obtaining insurance with an approved insurer or (2) by receiving approval from the Director of Industrial Relations to self-insure. Cal.Lab. Code § 3700 (West 1989). As to the first method, all workers' compensation insurance policies issued by insurance companies in California must be pre-approved by the Policy Approval Bureau of the California Department of Insurance. Cal.Ins.Code § 11658 (West 1988). Only a licensed insurer may sell workers' compensation insurance in California. Declaration of Joseph P. Powers ¶ 3. Insurers authorized to write compensation policies must post a bond or make a cash deposit to secure payment of benefits. Powers Decl., ¶ 7. As to self-insurance, the statute requires "proof satisfactory to the Director of Industrial Relations of ability to self-insure and to pay any compensation that may become due." Cal.Lab.Code § 3700(b). A self-insured employer must post a security deposit of at least 135 percent of the employer's estimated future liability for compensation to secure payment of claims and administrative costs. Cal.Lab.Code § 3701(b); Declaration of Mark B. Ashcraft, ¶ 6. In addition to posting security, self-insured employers must contribute to the Self–Insured Security Fund (SISF). Ashcraft Decl., ¶¶ 6, 12. Both methods of compliance in Labor Code

§ 3700 therefore seek to assure long term benefit security.

Although California's workers' compensation statutes nowhere explicitly provide that workers' compensation plans "must be separately administered," the State has provided ample evidence that this is in fact the case.[5] California law provides only two choices for employers: either purchase insurance from an authorized carrier or implement an approved self-insurance program. The employer has no choice to forgo coverage. Both paths to coverage are governed by detailed regulatory frameworks requiring employers to maintain workers' compensation coverage distinct from all other types of insurance. *See* Powers Decl., Ascraft Decl. For example, implementing regulations provide (1) that workers' compensation insurance, with only limited exceptions, must be provided in a separate policy, *see* Powers Decl., ¶ 6b; (2) that a self-insured employer must maintain separate claim files and records, and is subject to separate credentialing, estimating and reporting requirements, *see* Ashcraft Decl., ¶¶ 7–11; and (3) that workers' compensation providers are subject to the authority of the Director of Industrial Relations, who has no authority over any other employment benefit, *see* Ashcraft Decl., ¶ 11. Further, defendants explicitly acknowledge this separate administration in their briefs: "... the State of California, in requiring all employers to establish 'separately administered' plans to provide the occupational injury and illness benefits mandated by the Workers' Compensation Act...." Defs.' Opp'n to Barker's Mot. to Remand at 48:7–10; Defs.' Opp'n to Gomes' Mot. to Remand at 24:13–16.[6] In short, California requires employers to provide workers' compensation benefits in plans "maintained solely" for that purpose.

---

**5.** It seems neither necessary nor useful to require the State to enact legislation using the magic words that a "separately administered" plan is required. It is enough that California's requirements effectively result in a separate system which is rigorously regulated. The Court in *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), discussed *infra*, did not require New York's statute to include explicit language that its disability program was to be "separately administered."

**6.** At the oral argument on the Barker case, the court expressed considerable doubt as to whether the State in fact required a separately administered program. The question was not addressed in the briefing in any depth because both parties agreed that such was the case. Perhaps because of the court's expression of concern, the briefing and declarations in *Gomes* addressed this question at length. The court is now satisfied that the California workers' compensation scheme requires employers to maintain a separately administered plan.

While California requires every employer to maintain separate workers' compensation coverage through approved insurers or by authorized self-insurance, at a level of compensation established by law, the statutory scheme does not prohibit an employer from offering additional or duplicative benefits to injured workers in other ways. Indeed, the statutory scheme expressly disclaims any such limitation by preserving the employer's "right to provide by mutual or other insurance, or by arrangement with his employees, or otherwise, for the payment to such employees ... of sick, accident, or death benefits, in addition to the" compensation required by statute. Cal.Lab.Code § 3750(d) (West 1989). Thus, the workers' compensation laws do not forbid an employer from offering workers' compensation benefits as part of a multi-benefit plan. The employer may do so, but will only comply with the State's workers' compensation laws by providing in addition separately administered workers' compensation insurance which meets all state requirements for benefits and security of compensation.

V

Two recent Supreme Court cases govern the resolution of this challenge to the State's ability to insist on a separate workers' compensation plan. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court examined the scope of the section 1003(b)(3) exemption. The Court considered whether ERISA pre-empted a New York statute requiring employers to pay sick leave benefits to employees unable to work because of pregnancy.[7] The New York statute required employers to pay weekly benefits to all disabled employees, including pregnant workers, equal to "one-half the employee's average weekly wage." *Id.* at 90 n. 4, 103 S.Ct. at 2896 n. 4. The statute expressly permitted employers to meet their obligations under the disability law by including disability insurance in a multi-benefit ERISA plan. *Id.* at 108–09, 103 S.Ct. at 2905–06 (citing N.Y.Work.Comp.

Law App. § 355.6 (McKinney Supp. 1982–83)).

The *Shaw* Court recognized that any plan "maintained solely" to comply with applicable disability insurance laws would be exempt from ERISA. The difficulty arose as to multi-benefit plans. The Court concluded that the portions of such multi-benefit plans designed to comply with the Disability Benefits Law did not fit within the statutory exemption because the exemption refers to "plans" and not to portions of plans or to individual benefits. The Court found that to qualify for the exemption "the purpose of the entire plan must be to comply with an applicable disability insurance law." *Id.* at 107, 103 S.Ct. at 2905. In determining purpose, however, the employer's subjective motivation was irrelevant: "The test is not one of the employer's motive ... but whether the plan, as an administrative unit provides only those benefits required by the applicable state law.... Only separately administered disability plans maintained solely to comply with the [New York] Disability Benefits Law are exempt from ERISA coverage under § 4(b)(3)." *Id.*

The Court then addressed the issue that arises in this case: to what extent can a state impose its standards for disability benefits on employers offering such benefits within ERISA covered multi-benefit plans? The Court affirmed the states' authority to regulate such employers by requiring separate plans:

Congress surely did not intend, at the same time it preserved the role of the state disability laws, to make enforcement of those laws impossible. A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit. Such a plan would be exempt under § 4(b)(3). The fact that state law permits employers to meet their state-law obligations by including disability insurance benefits in a multi-benefit ERISA plan.... does not make the state law wholly unenforceable as to employers who choose that option.

7. Although Shaw involved a state disability statute, its holding and reasoning are equally applicable to state workers' compensation laws, since both disability and worker's compensation plans are included in the section 1003(b)(3) exemption.

In other words, while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply.

*Id.* at 108, 103 S.Ct. at 2905–06.

In *District of Columbia v. Greater Washington Board of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Court found pre-empted by ERISA a District of Columbia law requiring employers providing health insurance coverage to provide equivalent health benefits for injured employees eligible for workers' compensation benefits. The Court of Appeals had found the statute pre-empted in part because "[b]y tying the benefit levels of the workers' compensation plan to those provided in an ERISA-covered plan, 'the [statute] could have a serious impact on the administration and content of the ERISA-covered plan.'" *Id.* at ——, 113 S.Ct. at 583 (quoting *District of Columbia v. Greater Washington Board of Trade*, 948 F.2d 1317, 1325 (D.C.Cir.1991)). The Court affirmed, holding that by "specifically refer[ring] to welfare benefit plans regulated by ERISA," the statute was pre-empted. *Id.* The Court distinguished *Shaw*, noting that although the New York law at issue there expressly permitted the employer to comply through a covered multi-benefit plan, this "did not mean that the law related to such ERISA plans for pre-emption purposes." *Id.* The Court rejected the argument that *Shaw* endorsed a two-step pre-emption process in which a state law relating to an ERISA covered plan might still survive pre-emption "if employers could comply with the law through separately administered plans exempt under § 4(b)." *Id.* at ——, 113 S.Ct. at 585. Rather, "the Disability Benefits Law upheld in *Shaw*—though mandating the cre-

ation of a 'welfare plan' as defined in ERISA—did not relate to a welfare plan subject to ERISA regulation." *Id.*

## VI

In light of *Shaw*, defendants' claim of pre-emption must fail. *Shaw*, reaffirmed in *Greater Washington*, holds that a state's insistence on a separately administered workers' compensation plan does not "relate to" to an ERISA covered plan. Rather, such a requirement relates to a plan specifically exempted from ERISA regulation and pre-emption under § 4(b). The language quoted at length above from *Shaw* is not fairly subject to any other interpretation. The Court scarcely could have been clearer in stating that a "State may require an employer to maintain a disability plan complying with state law as a separate administrative unit." *Shaw*, 463 U.S. at 108, 103 S.Ct. at 2905. The Court noted that a State may "force" an employer to choose between providing benefits through an ERISA plan or through a separately administered plan, and that if "the State is not satisfied" with the ERISA plan "it may compel" the employer to establish a separate plan that does comply. *Id.*[8]

California requires employers to establish separately administered workers' compensation plans in order to comply with California's workers' compensation program. Under *Shaw*, such a requirement does not relate to ERISA covered plans and is not pre-empted.

Defendants' efforts to distinguish or narrow *Shaw* are not persuasive. First, defendants argue that *Shaw* only permits the states to insist on separate plans when the employer chooses to provide inferior benefits through a multi-benefit plan. This misconceives the holding in *Shaw*. Both *Shaw* and *Greater Washington* interpret and apply specific statutory language in ERISA addressing pre-emption. Under the statute, there is pre-emption if the state law "relates to" an ERISA covered plan. In both cases the

---

8. In discussing the holding in *Shaw*, the Court in *Greater Washington* noted that the New York law "though mandating" the creation of a separate welfare plan yet did not relate to an ERISA covered plan. *Greater Washington*, —— U.S. at

—, 113 S.Ct. at 585. Nothing in *Greater Washington* undermines the broad power and discretion afforded by *Shaw* to the State to require an independent plan.

Court decided the pre-emption question without regard to the level of benefits or whether the employer could choose to provide the benefits in a multi-benefit or exempt plan. The *Shaw* Court simply holds that if the State requires a separate workers' compensation plan of a certain kind such a measure relates only to an exempted plan. Indeed, when a state requires a separate plan only if certain benefits are not provided in a covered multi-benefit plan, or gives the employer the choice of complying within an ERISA covered plan, the state comes closer to ERISA pre-emption because its laws may affect the content of a covered ERISA plan. Nonetheless, *Shaw* found such an approach permissible, although the State could not directly regulate the multi-benefit plan. But certainly it is not necessary for the State to provide such a choice or to set minimum benefits for a multi-benefit plan, and the case against pre-emption is strengthened when the State does not.[9]

If a state law relates to a covered plan, the law is pre-empted whether the plan offers inferior or superior benefits than required by the State. The converse is also true: if a state law does not relate to a covered plan, then the law is not pre-empted whether or not the same benefits could be provided in a covered plan. The California scheme does not attempt to regulate multi-benefit plans. As noted above, the State does not forbid or regulate the provision of workers' compensation benefits through multi-benefit plans. Rather, the State requires that without respect to what employers may provide in other plans, employers must provide separate approved workers' compensation plans. The State leaves covered plans untouched. Under *Shaw*, its regulations relate only to exempted plans.[10]

Moreover, defendants' focus on "benefits" is disingenuous. *Shaw* does not address "benefits" but speaks only of "requirements." Of concern here is the State's requirement that the provider of workers' compensation benefits be solvent. The State achieves this end by requiring administrative approval of insurers and self-insurers, and by requiring separate plans. This concern as to solvency is of equal stature as any concern as to the level of benefits. For this reason as well, defendants' claim that their benefit levels meet State standards falls short since they have not complied with State standards designed to assure certainty of payment.

Second, defendants claim that the *Shaw* Court's concern with the "administrative impracticalities of permitting mutually exclusive pockets of federal and state jurisdiction within a plan," see *id.*, 463 U.S. at 107–08, 103 S.Ct. at 2905, works to limit the applicability of *Shaw* to state-mandated benefits, but not to a state-mandated administrative scheme. This section of *Shaw*, however, addresses

---

**9.** *Shaw* addressed the propriety of a state requiring an employer to choose between a separate plan and a multi-benefit plan because the New York law at issue expressly permitted such a choice. The New York law's provision of a choice, and direct reference to multi-benefit plans, however, were not underpinnings of the Court's holding but were obstacles to a finding of no pre-emption. *Cf. District of Columbia v. Greater Washington Board of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 585, 121 L.Ed.2d 513 (1992).

Moreover, in *Greater Washington* the Court explicitly rejected a proposed "two-step" analysis in which a law "relating to" covered plans could be saved from pre-emption if the employer could provide an exempt plan. The Court reiterated that the holding in *Shaw* did not depend on the provision of choice to the employer but on the fact that the New York benefits law did not "relate to" covered plans.

**10.** The weight of the developing case law is against finding pre-emption of state workers' compensation provisions which do not seek to

affect the benefits provided by non-exempt plans. *See Foust v. City Insurance Co.,* 704 F.Supp. 752 (W.D.Tex.1989) (Texas' optional workers' compensation insurance program is exempt under section 1003(b)(3) because an employer who opts to enroll buys into an elaborate separate regulatory system governing the provision of benefits, and makes such a choice "solely" to comply with the workers' compensation law); *accord, Olivarez v. Utica Mutual Insurance Co.,* 710 F.Supp. 642 (N.D.Tex.1989). *See also Gibson v. Wyatt Cafeterias, Inc.,* 782 F.Supp. 331 (E.D.Tex.1992) (common law claim for negligence against employer who elected not to subscribe to Texas' workers' compensation insurance program was not pre-empted by virtue of the employer's subscription to a multi-benefit ERISA plan instead of the state scheme; employee's claim did not "relate to" the plan under section 1144(a)); *accord, Benson v. Wyatt Cafeterias, Inc.,* 804 F.Supp. 876 (N.D.Tex.1991).

only whether the State can impose its regulations on portions of multi-benefit, possibly multi-state, plans. The Court concluded that such a mix of regulatory regimes covering a single plan would be confusing and burdensome. But implicitly the Court found no such burden when the State requires a separately administered plan which is solely subject to its regulations. And, as noted above, the defendants' effort to distinguish the State's administrative requirements—which assure solvency and therefore the provision of *any* benefit—from its required benefit levels is not persuasive.[11]

## VII

For the reasons stated above, the court finds that Barker's and Gomes' state law claims are not pre-empted by ERISA. The clerk shall remand the actions to state court in accordance with 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

11. The Department of Insurance has submitted an advisory opinion of the United States Department of Labor dated November 25, 1992. The advisory opinion concludes that "a state administrative action denying a certificate of compliance with state-mandated workers' compensation requirements would not, in the view of the Department, relate to the ERISA-covered employee benefit plan for purposes of section 514(a) and would not, therefore, be preempted by ERISA." The advisory opinion was prepared under ERISA Procedure 76–1 for litigation in the Northern District of California in which the same questions are presented as here.

Although the advisory opinion properly is consulted, ERISA Procedure 76–1 provides that such an opinion is binding only on the parties to the letter, and that such letters have no precedential effect. *See Keystone Consolidated Industries v. C.I.R.*, 951 F.2d 76, 79 (5th Cir.1992). The advisory opinion is not entitled to deference. *See Nationwide Mutual Insurance Co. v. Darden*, —— U.S. ——, —— n. 5, 112 S.Ct. 1344, 1349 n. 5, 117 L.Ed.2d 581 (1992).