**STATE OF NEVADA, ex rel. its DEPARTMENT OF INSUR-ANCE, Plaintiff,**

v.

**CONTRACT SERVICES NETWORK, INC., Contract Service Union Local 211, United States Administrators, Inc., Contract Services Employee Trust, Gary Duke, Mark Grimes, Forrest O'Hara, Richard Kester, Donald W. Tourville, Murel D. Rucks, Defendants.**

No. CV–S–93–00686–PMP (RJJ).

United States District Court, D. Nevada.

Oct. 4, 1994.

As Amended Oct. 13, 1994.

Edward T. Reed, Deputy Atty. Gen., Dept. of Ins., Carson City, NV, for plaintiff.

Allen B. Breslow, Frank & Breslow, Melville, NY, for defendant Financial Consultants Guild of America.

Gary Moss, Las Vegas, NV, for defendants Contract Services Network, Inc., U.S. Administrators, Inc., Contract Services Employees Trust, Gary Duke, Mark Grimes, Donald Tourville and Murel D. Rucks.

John McManus, Michelle L. Morgando, Schreck, Jones, Bernhard, Woloson & Godfrey, Las Vegas, NV, John A. Claro, Claro & Claro, Oklahoma City, OK, for defendants Contract Services Union Local 211, Forrest O'Hara and Richard Kester.

## ORDER

PRO, District Judge.

Before the Court is Plaintiff State of Nevada's First Motion for Partial Summary Judgment (# 41), filed April 25, 1994. Defendants Contract Services Union, Local 211, Forrest O'Hara and Richard Kester, Contract Services Network, Inc., Contract Services Employees Trust, Gary Duke, Mark Grimes, Donald W. Tourville and Murel D. Rucke (collectively "Defendants") filed their Opposition to Plaintiff's Motion for Partial Summary Judgment (# 47) on May 18, 1994. Plaintiffs filed their Reply (# 49) on May 31, 1994.

Defendants also filed a Motion To Stay Proceedings Pending Outcome of Related Proceedings (# 47) ("Motion to Stay") on May 18, 1994. Plaintiffs filed their Opposition (# 49) on May 31, 1994. No reply was filed.

This Court heard oral argument on both Motions on September 2, 1994.

### I. *Factual Background*

This case began when Plaintiff filed its Complaint for Injunctive and Declaratory Relief and Fines ("Complaint") in Nevada state court. Plaintiff alleged that Defendants Contract Services Union, Local 211 ("Union"), Financial Consultants Guild of America, Contract Services Network, Inc., ("CSN"), United States Administrators ("USA"), Contract Services Employee Trust ("Trust"), Gary Duke, Mark Grimes, Forrest O'Hara, Richard Kester, Donald W. Tourville, and Murel D. Rucks all violated Nev. Rev.Stats. § 685B.030, which prohibits the unauthorized transaction of the business of insurance.[1]

Plaintiff alleges that Defendants are not authorized by the Nevada Department of Insurance to act as insurers in the State of Nevada, yet Defendants contacted Nevada employers in order to solicit the CSN plan. *See,* Complaint, attached as Exhibit A to Notice of Removal (# 1). Specifically, Plaintiffs allege that the plan offered by Defendants does not comply with the Nevada Industrial Insurance Requirements. *See,* Complaint, attached as Exhibit A to Notice of Removal (# 1). Defendants maintain, however, that their Trust is an ERISA trust set up pursuant to a collective bargaining agreement among employers and not subject to state regulation. *See,* Joint Status Conference Memorandum (# 12).

### II. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

▮▮▮ The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial.

---

1. The State of Nevada, in its complaint, seeks penalties and declaratory and injunctive relief against the Defendants. Nevada prohibits an insurer from the unauthorized transaction of the business of insurance. Nev.Rev.Stats. § 685B.030 (2) (1993). An insurer includes:
(a) All corporations, associations, partnerships and natural persons engaged as principals in the business of insurance, including a fraternal benefit society, a nonprofit corporation offering dental, hospital and medical services, a health maintenance organization, a prepaid limited health service organization, an organization for dental care, a dental plan, an optometric plan or a similar health service plan ...
Nev.Rev.Stats. 685B.030(1) (1993).

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

### III. *Nevada Requirements for Workers' Compensation*

The Nevada Industrial Insurance Act requires employers to "provide and secure compensation according to the terms, conditions and provisions" of Nev.Rev.Stats. Chapters 616 and 617. Nev.Rev.Stats. § 616.270(1) (1993); Nev.Rev.Stats. § 617.200 (1) (1993). The terms, conditions and provisions of Chapter 616 providing for the payment of premiums to the state insurance fund and for compensation when an employee is injured are "conclusive, compulsory and obligatory." Nev.Rev.Stats. § 616.285 (1993).

Alternatively, an employer may qualify as a self-insured employer under Nev.Rev.Stats. § 616.291(1) (1993). Upon qualification, the Commissioner of Insurance must issue a certificate of qualification as a self-insured employer. Nev.Rev.Stats. § 616.293 (1993).

An employer who fails to provide and secure compensation as required by the terms of Chapter 616 is subject to fines and criminal penalties as defined by Nev.Rev.Stats. § 616.630 (1993). Nonetheless, an employer can reject the terms of the Industrial Insurance Act. *Sullivan v. Second Judicial District Court,* 74 Nev. 334, 331 P.2d 602, 337 (1958). An employer may reject the terms of the Act in one of two ways: (1) by failing to pay all the premiums to the state insurance fund or (2) by failing to maintain a certificate of self-insurance. Nev.Rev.Stats. § 616.305(3) (1993).

It is clear, then, that Nevada allows an employer to provide workers' compensation only through two methods: through the State Industrial Insurance Sys-

tem and as a self-insured employer pursuant to Nev.Rev.Stats. § 616.293. *See,* Nev.Rev.Stats. § 616.305(3). *See also,* Nev.Rev.Stats. §§ 616.285 and 616.291(1). Moreover, both methods of coverage under the Industrial Insurance Act are heavily regulated. Nev.Rev.Stats. §§ 616.010–616.700. This system requires a separately administered plan. *Cf., Barker v. Pick N Pull Auto Dismantlers, Inc.,* 819 F.Supp. 889, 892 (E.D.Cal 1993), fn. 5, citing *Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (California workers' compensation law, which requires that an employer comply by utilizing a state-approved insurer or by qualifying as a self-insurer, is a "separately administered" plan for purposes of Shaw).

Plaintiffs assert that the plan offered by Defendants does not comply with Nevada law. Defendants respond that compliance is not necessary because their plan is an ERISA plan which is not subject to state regulation.

## IV. *Employment Retirement Income Security Act*

### a. *Generally*

Under 29 U.S.C. § 1144(a), the Employment Retirement Income Security Act ("ERISA") preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a) (1994). ERISA applies to any employee benefit plan if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both. 29 U.S.C. § 1003(a) (1994).

Section 1002(3) defines "employee benefit plan" as including any plan established or maintained for the purpose of providing "benefits in the event of sickness, accident, disability, death or unemployment."[2] 29 U.S.C. § 1002(3) (1994); 29 U.S.C. § 1002(1) (1994).

Defendants assert that its plan is a multiemployer plan that is subject to ERISA. ERISA defines a multiemployer plan as one "(i) to which more than one employer is required to contribute; (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary may prescribe by regulation." 29 U.S.C. § 1002(37)(A) (1994). *See,* 29 C.F.R. 2510 (1993). Plaintiff asserts that the collective bargaining agreement on which the multiemployer plan is based is a "sham."

Plaintiff offers no evidence in its Motion for Summary Judgment that the plan is a sham. The Court finds that Plaintiff has not met its burden in producing evidence indicating the nonexistence of a valid collective bargaining agreement. Because all facts and inferences drawn must be viewed in the light most favorable to the responding party, this Court will treat the collective bargaining agreement as valid. *See, Poller v. CBS, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

Further, Defendant asserts that the State law "relate[s] to" its multiemployer plan. A law relates to a covered benefit plan for purposes of § 1003(a) if it refers to or has a connection, either direct or indirect, with covered benefit plans. *District of Columbia v. Greater Washington Board of Trade, ——*

**2.** Section 1002 also defines "employee welfare benefit plan" as any benefit described in section 302(c) of the Labor Management Relations Act. 29 U.S.C. § 1002 (1994). Section 302(c) of the Labor Management Relations Act (LMRA), codified at 29 U.S.C. § 186(c), lists among the benefits, "compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing." 29 U.S.C. § 186(c)(5) (1994). Defendants argue that the relation of these sections and congressional intent to establish procedures relating to collective bargaining operate to preclude application of state industrial insurance laws. Because the Court finds that the exemption to ERISA applies, *see* discussion *infra,* and because the Court finds that the LMRA does not preempt application of state laws, *see* discussion *infra,* the Court rejects this argument.

U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992).

[13] In the case of *Shaw v. Delta Air Lines, Inc.,* the Supreme Court held that New York's Disability Benefits Law "relate[s] to" an ERISA employee benefit plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, 103 S.Ct. 2890, 2901–02, 77 L.Ed.2d 490 (1983). The court reasoned that because the Disability Benefits Law required employers to pay employees specific benefits, the law had a connection to benefit plans covered by ERISA. *Id.,* at 97, 103 S.Ct. at 2900. The Nevada worker's compensation requirements require every employer to maintain some form of industrial insurance. *See,* Nev.Rev. Stats. § 616.270(1); Nev.Rev.Stats. § 617.200(1); Nev.Rev.Stats. § 616.291(1). The Nevada laws appear to have a connection and relate to the Defendant's employee benefit plan. *Shaw,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900; *Greater Washington,* —— U.S. ——, ——, 113 S.Ct. 580, 583.

b. *Exemption*

■ However, ERISA does not apply to a benefit plan which is "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3) (1994). Plaintiffs maintain that even if Defendants had a plan covered by § 1003(a), it still falls within the exemption of § 1003(b)(3).

In *Shaw v. Delta Air Lines, Inc.,* the Supreme Court analyzed the New York Disability Benefits Law with regard to the exemption provision of § 4(b) of ERISA, codified at 29 U.S.C. § 1003(b). The Supreme Court recognized that separately administered disability plans maintained solely to comply with the Disability Benefits Law were exempt from coverage under ERISA. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 108, 103 S.Ct. 2890, 2905–06, 77 L.Ed.2d 490. Moreover, the state law was still enforceable as to employers who met their state-law obligation by including disability benefits in a multibenefit ERISA plan. *Id.*

In other words, while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply.

*Id.*

Plaintiffs cite the cases of *Barker v. Pick N Pull Auto Dismantlers, Inc.,* 819 F.Supp. 889 (E.D.Cal.1993) and *Employee Staffing Services v. Aubry,* 20 F.3d 1038 (1994), for the proposition that the State of Nevada may seek penalties and injunctive and declaratory relief against Defendants because their plan does not comply with the Nevada Industrial Insurance Act. Both *Barker* and *Aubry* dealt with the California workers' compensation requirements, which are similar to Nevada's Industrial Insurance Act. *See,* Nev.Rev. Stats. §§ 616.270(1), 617.200(1) and 616.291(1); *see also,* discussion, supra.

In *Barker,* the district court allowed a negligence claim and a claim filed with the California Workers' Compensation Appeals Board against employers who failed to comply with the California workers' compensation law, which requires each employer to purchase insurance from a state-authorized carrier or to become self-insured. *Barker v. Pick N Pull Auto Dismantlers, Inc.,* 819 F.Supp. 889 (E.D.Cal.1993). Both employers instead subscribed to an employee benefit plan, allegedly subject to ERISA. *Id.,* at 890. The court, applying *Shaw,* reasoned that a requirement that employers establish separately administered workers' compensation plans to comply with California law does not "relate to" ERISA covered plans. *Id.,* at 894. As a result, ERISA did not preempt such a requirement. *Id.*

Similarly, the Ninth Circuit in *Aubry* affirmed the dismissal of a complaint filed by the plaintiff employer seeking to enjoin the State of California from prohibiting the employer from using employee labor until it complied with the California workers' compensation law. *Employee Staffing Services v. Aubry,* 20 F.3d 1038, 1039 (1994). The employer maintained a multipurpose ERISA

plan. The Ninth Circuit ruled that ERISA preemption does not bar the California workers' compensation requirement. *Id.*, at 1041. Explaining *Shaw*, the Ninth Circuit noted:

Shaw says that although a state cannot regulate an employer's ERISA plan, it can require an employer to maintain a separate disability plan exempt from ERISA, under the same coverage exemption as applies to workers' compensation plans.... We see no reason to distinguish workers' compensation plans from disability plans....

California cannot tell employers how to write their ERISA plans. But its command that they secure payment of workers' compensation through state-licensed insurance or approved self-insurance does not control how they write their ERISA plans.

*Id.*, at 1041–1042.

Plaintiff here seeks to enjoin Defendants from engaging in the unauthorized transaction of insurance. The plan Defendants offer to prospective employers does not comply with the Nevada Industrial Insurance requirements. Moreover, the Nevada requirements do not control the composition of the ERISA plans; instead, they require that employers maintain a separately administered Industrial Insurance plan. The Court finds that the benefit plan at issue here falls within the exemption at 29 U.S.C. § 1003(b)(3). As such, the Nevada requirements are not preempted by ERISA. *Aubry*, 20 F.3d 1038, 1041 (1994).

#### c. *Saving and deemer clause*

The saving clause of § 1144 operates to preserve state regulation of the "business of insurance." *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 742–744, 105 S.Ct. 2380, 2390–91, 85 L.Ed.2d 728 (1985). Under this clause, ERISA cannot be construed "to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A) (1994).

However, the savings clause is limited by the so-called deemer clause. Under this clause, "[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies...." 29 U.S.C. § 1144(b)(2)(B) (1994).

The Defendants argue that the Trust falls within the deemer clause, and that their Trust is therefore not "saved" from ERISA preemption. Because the Court finds that the benefit plan falls within the exemption at 29 U.S.C. § 1003(b)(3), the Court finds the deemer clause inapplicable. The Court finds that ERISA does not preempt the Nevada requirements of maintaining authorized industrial insurance.

### V. *National Labor Relations Act*

Defendants next maintain that the National Labor Relations Act (NLRA) preempts the Plaintiff's suit. Defendants assert that the relief requested by the State directly interferes with rights granted by the NLRA: the right of employees to organize and the right of the union to collectively bargain with the employer on behalf of its members. *See,* 29 U.S.C. § 157 (1994).

While not explicit in the Act, the NLRA preempts generally state regulations and causes of action. *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 748–749, 105 S.Ct. 2380, 2393–94, 85 L.Ed.2d 728 (1985). There are two NLRA preemption principles. *Id.*

The first is the *Garmon* rule. Under this principle, "state regulations and causes of action are presumptively pre-empted if they concern conduct that is actually or arguably either prohibited or protected by the Act." *Belknap, Inc. v. Hale,* 463 U.S. 491, 498, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983). However, if the behavior to be regulated is "of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility," then the NLRA does not preempt the state law. *Id.; see, San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. This rule protects the primary jurisdiction of the NLRB to determine what kind of conduct is prohibited or protected by

the Act. *Metropolitan Life,* 471 U.S. 724, 748, 105 S.Ct. 2380, 2393–94.

▮ The second preemption doctrine "proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated." *Belknap,* 463 U.S. 491, 498, 103 S.Ct. 3172, 3177. This doctrine governs preemption questions that are neither arguably protected nor arguably prohibited by the NLRA. *Metropolitan Life,* 471 U.S. 724, 749, 105 S.Ct. 2380, 2394.

This case involves the applicability of a Nevada law requiring employers to comply with industrial insurance requirements. It implicates the second doctrine of preemption. *See, Metropolitan Life,* 471 U.S. 724, 750, 751, 105 S.Ct. 2380, 2394–95, 2395.

The Supreme Court in *Metropolitan Life* upheld a Massachusetts statute specifying minimum health-care benefits as applied to a plan negotiated by collective bargaining agreement against a claim of NLRA preemption. *Metropolitan Life,* 471 U.S. 724, 758, 105 S.Ct. 2380, 2399. The Court reasoned that the mandated-benefit law was a valid and unexceptional exercise of the state's police power. *Id.* The state legislation did not alter the balance of power between the parties to the contract. *Id.,* at 751, 105 S.Ct. at 2395. Because it did not limit the rights of self-organization or collective bargaining by the NLRA, the Act did not preempt the state law. *Id.,* at 758, 105 S.Ct. at 2399.

In reaching its conclusion, the Supreme Court considered the intent of Congress in enacting the Act and the authority traditionally granted to States under their police power. The Court stated:

> ... [W]e believe that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety.... States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety ... are only a few examples.... State laws requiring that

employers contribute to unemployment and workmen's compensation funds ... all have withstood scrutiny.

*Metropolitan Life,* 471 U.S. 724, 756, 105 S.Ct. 2380, 2398 (internal quotations and citations omitted).

Defendants argue that the case of *Bechtel Construction, Inc. v. United Board of Carpenters* governs this case. In *Bechtel,* the Ninth Circuit held that the NLRA preempted a California law setting minimum wages for apprentices because the law did upset the balance of power in the collective bargaining process. *Bechtel Construction, Inc., v. United Board of Carpenters,* 812 F.2d 1220, 1225–1226 (9th Cir.1987). Under the California law, lower than minimum wages could be negotiated with the approval of a state agency. *Id.,* at 1226. This state interference in the collective bargaining process was impermissible. *Id.* The *Bechtel* court distinguished *Metropolitan Life* by stating that *Metropolitan Life* only involved minimum standards which had no effect on the bargaining process. Further, the California law did not affect all workers equally, as did the mandated-benefits law in *Metropolitan Life.* *Id.*

▮ The Court finds that *Bechtel* is inapposite to this case. Unlike *Bechtel,* this case involves Nevada's industrial insurance law applied equally to all employers. Further, the Court finds that it has no effect on the bargaining process. This Court finds that *Metropolitan Life* applies to this case. States possess broad authority under the police power to regulate employment relationships in order to protect workers within the state. *De Canas v. Bica,* 424 U.S. 351, 356, 96 S.Ct. 933, 936–37, 47 L.Ed.2d 43 (1976). As a result, the Court finds that the NLRA does not preempt Nevada's Industrial Insurance Act. The fact that Nevada allows only two methods to comply with industrial insurance requirements does not mandate a different result.

## VI. *Labor Management Relations Act and Federal Arbitration Act*

Defendants argue that federal procedures relating to collective bargaining agreements prohibit interference from the states. Spe-

**394**

cifically, Defendants assert that the Labor Management Relations Act (LMRA) prevents the application of state law to resolve disputes over rights established in a collective bargaining agreement, and that the Federal Arbitration Act (FAA) may potentially preempt application of state law. *See,* 29 U.S.C. §§ 141–187; 9 U.S.C. §§ 1–208.

 Section 301 of the LMRA, codified at 29 U.S.C. § 185, provides exclusive remedies for disputes over contracts between an employer and a labor organization. 29 U.S.C. § 185(a) (1994). Similarly, the Federal Arbitration Act preempts state law providing an alternate avenue to the resolution of disputes without regard to a private agreement to arbitrate. *Perry v. Thomas,* 482 U.S. 483, 490–491, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426.

The Court finds these principles inapplicable to the present case. There is neither a dispute over the rights established in a collective bargaining agreement, nor is there a private agreement to arbitrate at issue in this case. The Court therefore finds that neither the LMRA nor the FAA preempt the state's application of its industrial insurance laws.

**VII.** *Motion to Stay*

Defendants request a motion to stay the proceedings in this Court pending the outcome of proceedings pending in United States District Court, Western District of Oklahoma, Case No. CIV–94–441–T. That court issued a preliminary injunction appointing an Independent Fiduciary and authorizing that Independent Fiduciary to "review all pending actions to which the Plan is a party and, in his sole discretion, decide whether to continue, settle or dismiss the Plan's allegations and defenses in the actions." *See,* Defendant's Motion to Stay (# 47), Exhibit A.

The Motion for Summary Judgment has been fully briefed by all parties, and a hearing was held at which counsel for Defendants were present. The Court finds no reason to stay the proceedings. Accordingly, the Motion to Stay is denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Stay (# 47) is denied.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (# 41) is granted, and Judgment is hereby entered in favor of Plaintiff and against Defendants as to Plaintiff's Second Claim for Relief for a permanent injunction and on Plaintiff's Third Claim for Relief for declaratory judgment.

IT IS FURTHER ORDERED that Plaintiff shall, not later than October 24, 1994, submit to the Court a proposed form of Permanent Injunction and Declaratory Judgment.