USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1874 COMBINED MANAGEMENT, INC., Plaintiff, Appellant, v. SUPERINTENDENT OF THE BUREAU OF INSURANCE OF THE STATE OF MAINE, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Aldrich and Cyr, Circuit Judges. ______________ _____________________ Richard G. Moon with whom Ralph A. Dyer was on brief for ________________ ______________ appellant. James M. Bowie, Assistant Attorney General, Department of ______________ the Attorney General, with whom Michael E. Carpenter, Attorney _____________________ General, Linda M. Pistner, Director, Regulatory Agency Unit, __________________ Department of the Attorney General, and Thomas D. Warren, __________________ Director, Litigation Unit, Department of the Attorney General, were on brief for appellee. Robert Abrams, Attorney General of the State of New York, _____________ Jerry Boone, Solicitor General, Jane Lauer Barker, Assistant ____________ ___________________ Attorney General in Charge of Labor Bureau, and Jennifer S. ____________ Brand, Assistant Attorney General, on brief for State of New _____ York, et al., amici curiae. John M. Rea, Chief Counsel, Vanessa L. Holton, Senior _____________ ___________________ Counsel, James D. Fisher, Staff Counsel, Gary J. O'Mara, Staff ________________ ______________ Counsel, Department of Industrial Relations, and Lloyd Aubry, _____________ Jr., Director, Department of Industrial Relations, State of ___ California, on brief for State of California, amicus curiae. Marsha S. Berzon, Michael Rubin, Indira Talwani, Altshuler, _________________ _____________ ______________ __________ Berzon, Nussbaum, and Berzon & Rubin on brief for the American _________________ _______________ Federation of Labor and Congress of Industrial Organizations and the International Ladies' Garment Workers' Union, AFL-CIO, amici curiae. Thomas S. Williamson, Jr., Solicitor of Labor, Marc I. ___________________________ ________ Machiz, Associate Solicitor, Plan Benefits Security Division, ______ Karen L. Handorf, Counsel for Special Litigation, Plan Benefits _________________ Security Division, and Elizabeth A. Goodman, Trial Attorney, Plan ____________________ Benefits Security Division, U.S. Department of Labor, on brief for the Secretary of Labor, amicus curiae. Allan M. Muir and Pierce, Atwood, Scribner, Allen, Smith & _____________ _________________________________________ Lancaster on brief for Maine Employers' Mutual Insurance Company, _________ amicus curiae. Michael M. Sykes, General Counsel, Oklahoma Department of _________________ Labor, and Kayla A. Bower, Attorney, Oklahoma Department of _______________ Labor, on brief for State of Oklahoma ex rel. Dave Renfro, Commissioner of Labor, Oklahoma Department of Labor, amicus curiae. ____________________ April 22, 1994 ____________________ -2- TORRUELLA, Circuit Judge. Plaintiff-Appellant, _______________ Combined Management, Inc. ("CMI"), brought an action to enjoin Brian K. Atchinson, in his representative capacity as Superintendent of the Bureau of Insurance for the State of Maine (the "Superintendent"), from enforcing certain provisions of Maine's workers' compensation statute. 39 M.R.S.A. 101 et seq. __ ___ CMI claimed that because CMI provides workers' compensation benefits through a welfare benefit plan that is covered by the Employee Retirement Income Security Act ("ERISA"), the Superintendent's efforts to apply the workers' compensation law to CMI are preempted by ERISA 514(a) of ERISA, 29 U.S.C. 1144(a). The district court dismissed CMI's complaint, finding that ERISA did not preempt Maine law. We affirm. I. BACKGROUND I. BACKGROUND CMI is an employee leasing company that leases the services of its workers' to a variety of businesses on a long- term basis. CMI provides employee benefits, including occupational injury and disability benefits, to the leased employees through a subscription to the International Association of Entrepreneurs of America Welfare Benefit Plan (the "IAEA Plan"). The workers' compensation portion of the IAEA Plan is not separately insured or administered. Maine state law, 32 M.R.S.A. 14055(1)(B), mandates that employee leasing companies or their client businesses must arrange for the payment of workers' compensation benefits in accordance with the requirements of the Maine Workers' -3- Compensation Act, 39 M.R.S.A. 101 et seq. The Workers' __ ___ Compensation Act requires that all employers provide workers' compensation either through an insurance carrier authorized by the state or through a self-insurance plan that meets the state's qualifications. 39-A M.R.S.A. 403.21 Maine requires authorized insurance carriers and self-insurers to provide ____________________ 1 39-A M.R.S.A. 403 provides in part: An employer subject to [the Workers' Compensation] Act shall secure compensation and other benefits to the employer's employees in one or more of the ways described in this section. . . . 1. INSURING UNDER WORKERS' COMPENSATION INSURANCE POLICY. The employer may comply with this section by insuring and keeping insured the payment of such compensation and other benefits under a workers' compensation insurance policy. . . . 2. PILOT PROJECTS. [The employer may participate in an authorized pilot project.] . . . 3. PROOF OF SOLVENCY AND FINANCIAL ABILITY TO PAY; TRUST. The employer may comply with this section by furnishing satisfactory proof to the Superintendent of Insurance of solvency and financial ability to pay the compensation and benefits, and depositing cash, satisfactory securities, irrevocable standby letters of credit issued by a qualified financial institution or a surety bond with the board, in such sum as the superintendent may determine . . . . 4. GROUP SELF-INSURERS; APPLICATION. Except for the provision relating to individual public employer self-insurers, subsection 3 is equally applicable in all respects to group self-insurers. -4- evidence of their financial solvency and meet certain funding requirements. See, e.g., 24-A M.R.S.A. 221-A, 410, 4431-4452; ___ ____ 39-A M.R.S.A. 403, 404. On January 29, 1993, the Maine Bureau of Insurance sent a letter to CMI stating that CMI's subscription to the IAEA Plan did not satisfy its obligation under state law to provide workers' compensation benefits through one of the methods authorized by 39-A M.R.S.A. 403. The letter did not "constitute a formal order or action of the Superintendent" but it did warn that failure of CMI to comply with the law could prompt some action in the future. One month later, CMI filed suit to enjoin the Superintendent from requiring CMI to obtain separate workers' compensation insurance or to establish a qualified program of self-insurance pursuant to 39-A M.R.S.A. 403. CMI also sought a declaratory judgment stating that any enforcement of 39-A M.R.S.A. 403 against CMI is preempted by ERISA. In response to CMI's request for a preliminary injunction, the magistrate judge suggested that he first address the issue of whether ERISA preempted Maine's workers' compensation laws. Although CMI would have to establish that its benefit plan, the IAEA Plan, was an ERISA covered plan under 29 U.S.C. 1002(3) and 1002(37)(A) before it could invoke the protections of ERISA's preemption provision, the magistrate noted that determining the status of the IAEA Plan would involve a fact intensive inquiry requiring additional discovery. Instead, with -5- the agreement of the parties, the magistrate ordered that the preemption issue be addressed first on the understanding that if he found ERISA did not preempt Maine law, he would then dismiss the case. Thus, for purposes of this threshold question only, the IAEA Plan is assumed to be a valid ERISA benefit plan. On June 15, 1993, the magistrate recommended a denial of the requested preliminary injunction and a dismissal of the case on the grounds that ERISA did not preempt Maine's workers' compensation law. The magistrate found that the workers' compensation law did not "relate to" the IAEA Plan offered by CMI because the law is a matter of general application affecting all private employers, whether or not they have adopted ERISA plans, and because the law does not affect the structure, administration, or type of benefits provided by any ERISA plan. On August 2, 1993, the district court affirmed and adopted the magistrate's recommended decision. CMI now appeals this decision. II. ERISA PREEMPTION II. ERISA PREEMPTION ERISA preempts state laws that "relate to" an ERISA covered welfare benefit plan. ERISA 514(a), 29 U.S.C. 1144(a).2 A state law "relates to" an ERISA covered plan "'if ____________________ 2 Section 514(a) provides that the provisions of ERISA: shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. -6- it has a connection with or reference to such a plan.'" District ________ of Columbia v. Greater Washington Bd. of Trade, 113 S. Ct. 580, ____________ ________________________________ 583 (1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, ____ _____________________ 96-97 (1983)); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. ________ __________________ _________ 133, 139 (1990). A state law may "relate to" a benefit plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." Greater Washington Bd. _______________________ of Trade, 113 S. Ct. at 583 (quoting Ingersoll-Rand, 498 U.S. at ________ ______________ 139). However, preemption will not occur where the state law has only a "tenuous, remote, or peripheral" connection with covered plans, "as is the case with many laws of general applicability." Id. at 583 n.1 (citing Shaw, 463 U.S. at 100 n.21); see also __ ____ ________ Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, ______ _______________________________________ 830-38 (1988). State laws that do not "relate to" an ERISA covered plan but instead "relate to" a benefit plan established solely to comply with state workers' compensation laws are not preempted by ERISA. Section 514(a); ERISA 4(b)(3), 29 U.S.C. 1003(b)(3).3 As Maine's workers' compensation law falls within ____________________ 29 U.S.C. 1144(a). 3 Section 4(b)(3) provides that ERISA shall not apply to any employee benefit plan if: such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws. 29 U.S.C. 1003(b)(3). -7- this special exemption, we affirm the district court's determination that ERISA does not preempt any efforts by the Superintendent to require CMI to provide workers' compensation benefits through an authorized insurance provider or qualified self-insurance. See Employee Staffing Servs., Inc. v. Aubry, No. ___ ______________________________ _____ 93-15482, 1994 WL 109731 (9th Cir. 1994) (holding that California's workers' compensation law, which is quite similar to Maine's, is not preempted by ERISA). A. The Workers' Compensation Exemption A. The Workers' Compensation Exemption ___________________________________ Congress explicitly exempted state workers' compensation schemes from ERISA's purview, see H.R. Rep. No. 93- ___ 1280, 93d Cong., 2d Sess. 383 (1974), reprinted in 1974 U.S. Code ____________ Cong. & Admin. News 5038, 5162, leaving intact the states' traditional regulation and oversight of this specialized system of insurance. See also 28 U.S.C. 1445(c) (forbidding removal _________ of workers' compensation benefits claims to federal court). In the statute, 4(b)(3) excludes benefit plans created solely to comply with state workers' compensation statutes from coverage under ERISA, and 514(a) excludes from preemption state laws that relate to those plans described in 4(b). 29 U.S.C. 1003(b) and 1144(a). Some state workers' compensation laws might "relate to" ERISA covered benefit plans, instead of, or in addition to, plans exempt under 4(b)(3), and thus fall under the broad sweep of ERISA's preemption clause. Greater Washington __________________ Bd. of Trade, 113 S. Ct. at 584-85. Laws which relate only to _____________ ____ welfare benefit plans exempt from ERISA's coverage, however, fit -8- safely under the umbrella of 4(b)'s exemption. Id. __ In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 106-09 ____ ______________________ (1983), the Supreme Court held in part that a New York law mandating the provision of certain disability benefits to employees was exempt from preemption under ERISA pursuant to 4(b)(3), even though employers could provide the required benefits through their ERISA covered plans. Because disability benefit laws are exempted from ERISA's coverage by the same provision exempting workers' compensation laws, 4(b)(3), 29 U.S.C. 1003(b)(3), the Shaw decision applies directly to this ____ case. The Supreme Court found in Shaw that: ____ A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit. Such a plan would be exempt under 4(b)(3). . . . [W]hile the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply. Id. at 108. See also Greater Washington Bd. of Trade, 113 S. Ct. ________ _______________________________ at 584-85 (reaffirming the holding in Shaw). ____ The Supreme Court also noted that although the exemption in 4(b)(3) applies only to separately administered disability plans maintained solely to comply with state law, and does not include ERISA covered benefit plans that provide a combination of exempt and non-exempt benefits, employers are not: -9- completely free to circumvent the Disability Benefits Law by adopting plans that combine disability benefits inferior to those required by that law with other types of benefits. Congress surely did not intend, at the same time it preserved the role of state disability laws, to make enforcement of those laws impossible. Shaw, 463 U.S. at 108. ____ Maine's workers' compensation law falls squarely within the dictates of Shaw. 29-A M.S.R.A. 403 mandates that ____ employers provide workers' compensation by purchasing approved insurance or by establishing an approved self-insurance plan. This is precisely what the Supreme Court contemplated when it found that states "may require an employer to maintain a [ 4(b)(3) exempt] plan as a separate administrative unit." Id.; __ accord Greater Washington Bd. of Trade, 113 S. Ct. at 584-85. In ______ _______________________________ the present case, the Superintendent expressed an opinion that CMI's subscription to the IAEA Plan does not satisfy the requirements of Maine's law. Further efforts to ensure CMI's compliance with the law would clearly constitute an act to "compel the employer to maintain a separate plan that does comply" with the workers' compensation law, an act which is explicitly approved of by Shaw. Shaw, 463 U.S. at 108. ____ ____ Even though CMI provides workers' compensation benefits through the IAEA Plan, which we assumed is an ERISA covered plan, Maine's law does not require, and the Superintendent does not request, that CMI alter the IAEA Plan in any way or provide or -10- not provide certain benefits through the IAEA Plan. In fact, the Maine law imposes no limitations or requirements, regulatory or otherwise, on the IAEA Plan or on any ERISA covered plan. Consequently, it does not "relate to" an ERISA plan such that preemption is triggered. In such a situation, CMI cannot don the mantle of ERISA preemption simply by including workers' compensation benefits in its welfare benefit plan and thereby escape the requirements of Maine's law. See Shaw, 463 U.S. at ___ ____ 108; Foust v. City Ins. Co., 704 F. Supp. 752, 754 (W.D.Tex. _____ _____________ 1989). CMI misinterprets Shaw to hold that states can only ____ require employers to provide a specified level or package of workers' compensation benefits and cannot otherwise interfere with plan administration through provisions like the funding and solvency requirements established in 39-A M.S.R.A. 403. CMI would thus limit the ERISA exemption under 4(b)(3) to laws mandating benefit outputs instead of laws establishing separate benefit plans. As a corollary to this claim, CMI contends that Shaw requires states to give employers a choice of providing the ____ specified benefits in its own ERISA plan or in a state mandated benefits plan. CMI maintains that because ERISA allows welfare benefit plans to provide workers' compensation benefits, refusing to give CMI the option of providing such benefits through the IAEA plan would effectively bar what ERISA permits. See Alessi ___ ______ v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524 (1981) (finding __________________________ state law that barred one method of calculating benefits -11- permitted by ERISA to be preempted). CMI cites several cases for the proposition that states may not force employers to separate workers' compensation _____________ benefits from their fully integrated ERISA plans. Id. at 521-26; __ PPG Industries Pension Plan A v. Crews, 902 F.2d 1148, 1150-51 ______________________________ _____ (4th Cir. 1990). CMI extends this proposition to argue that states are also prohibited from forcing employers to set up __________ separate workers' compensation plans. Although ERISA preempts state laws that prohibit an ERISA covered plan from providing certain benefits or from calculating benefits in a certain way (including laws that would force a plan to separate out a portion of its existing coverage), ___________ we find no support in Shaw, or any other case, for CMI's ____ proposition that ERISA preempts state laws that force employers to adopt a separately administered workers' compensation benefits ________ plan. On the contrary, 4(b)(3) and Shaw itself expressly ____ permit states to do just that. Shaw, 463 U.S. at 108. Shaw does ____ ____ not require states to give employers the option of complying with state law by providing workers' compensation benefits in their ERISA covered plans. Instead, Shaw merely states that the ____ existence of such an option does not automatically result in preemption, id. at 108; it certainly does not suggest the __ converse proposition, that an option is required for the 4(b)(3) exemption to apply. See Barker v. Pick N Pull Auto ___ ______ __________________ Dismantlers, Inc., 819 F. Supp. 889, 891-96 (E.D.Cal. 1993) __________________ (rejecting the identical argument that Shaw requires states to ____ -12- offer employers the option of providing workers' compensation through their ERISA plans).4 Likewise, Shaw does not limit the exemption under ____ 4(b) (3) to state laws mandating a specific level or package of benefits as opposed to laws mandating solvency and funding requirements. There is no basis for this distinction in 4(b)(3) or in Shaw. Additionally, the language of those two ____ authorities indicates that the case for exemption of solvency requirements is even stronger than the case for exemption of benefit requirements. See 4(b) (3), 29 U.S.C. 1003(b)(3) ___ (stating that the provisions of ERISA shall not apply to any employee benefit plan if "such plan is maintained solely for the ____ purpose of complying with applicable workmen's compensation laws) ____ (emphasis added); Shaw, 463 U.S. at 108 (stating that states can ____ require employers to comply with the "requirements" of its law by setting up "a separate administrative unit"); see also Barker, _________ ______ 819 F. Supp. at 895 (finding that "Shaw does not address ____ 'benefits' but speaks only of 'requirements,'" and that a state's concern about the solvency of a workers' compensation plan is "of equal stature as any concern as to the level of benefits."). If anything, state laws mandating specific benefits from an ERISA covered plan are more likely to "relate to" that ERISA plan than ____________________ 4 We note that this case differs from our recent decision in Simas v. Quaker Fabric Corp., 6 F.3d 849 (1st Cir. 1993), where _____ ____________________ we held that states cannot mandate the establishment of an ERISA covered plan. Id. That holding does not apply to state workers' __ compensation laws such as Maine's which mandate the establishment of exempt, non-ERISA covered plans. -13- laws which merely require the creation of an ERISA-exempt plan and which make no demands on the ERISA covered plan itself. Thus, the instant case presents an even clearer application of 4(b)(3)'s exemption than does Shaw. ____ Maine's law does not bar what ERISA permits. CMI remains free to provide the existing workers' compensation benefits to its employees and to integrate such benefits with the rest of its ERISA plan benefits. We are not presented in this case with a state workers' compensation law that prohibits ERISA covered plans from calculating pension benefits in a certain way, see Alessi, 451 U.S. at 521-26 (finding that ERISA preempted New ___ ______ Jersey law that prohibited ERISA plans from offsetting pension benefits by amounts awarded for workers' compensation); PPG ___ Industries, 902 F.2d at 1150-51 (finding preemption of West __________ Virginia law that prohibited an employer from deducting the amount of pension benefits previously paid to a retiree from the retiree's subsequent workers' compensation award), or a law that specifically refers to ERISA covered benefit plans in order to determine workers' compensation benefits, see Greater Washington ___ __________________ Bd. of Trade, 113 S. Ct. at 583-85 (holding that ERISA preempted ____________ District of Columbia law requiring that employers who provide health insurance coverage for their employees under an ERISA plan must provide equivalent health insurance coverage for injured employees eligible for workers' compensation). These cases cited by CMI in support of its misguided interpretation of Shaw found ____ preemption for reasons that do not apply to this case. We -14- therefore find that a state law that requires employers to operate a separately administered workers' compensation benefit plan is not preempted by ERISA. B. Does Maine's Law Nevertheless "Relate To" the IAEA Plan? B. Does Maine's Law Nevertheless "Relate To" the IAEA Plan? ________________________________________________________ CMI further argues that Maine's workers' compensation law relates to an ERISA plan, and thus is preempted, because the law affects the cost of providing ERISA benefits to its employees. Specifically, CMI alleges that if it is forced to adopt a separate workers' compensation plan, the burdens of duplicate administration and the higher cost of separate workers' compensation benefits provided outside of the integrated IAEA Plan will have a significant economic impact on CMI and render CMI unable to afford the existing level of benefits now offered through the IAEA Plan. According to CMI, a state law that creates a significant economic impact on an ERISA plan, without more, sufficiently "relates to" the plan and is therefore preempted. E-Systems, Inc. v. Pogue, 929 F.2d 1100, 1103 (5th _______________ _____ Cir.), cert. denied, 112 S. Ct. 585 (1991); Travelers Ins. Co. v. ____ ______ __________________ Cuomo, 813 F. Supp. 996, 1002-06 (S.D.N.Y. 1993).5 _____ To begin with, we decline to address whether a ____________________ 5 As CMI points out, Travelers cites FMC Corp. v. Holliday, 498 _________ _________ ________ U.S. 52, 58-60 (1990), for the proposition that state laws that increase plan costs are preempted. Travelers, 813 F. Supp. at _________ 1006. FMC Corp. v. Holliday makes no mention of state laws that _________ ________ merely impose additional costs. Instead, the Supreme Court found that state laws interfering with an ERISA plan's calculation of benefits, in that case through a state antisubrogation law, was preempted. FMC Corp., 498 U.S. at 58-60. Although we need not __________ decide the issue in this case, the question of whether increased costs alone can trigger preemption is far from settled. -15- significant economic impact on an ERISA covered plan may be sufficient by itself to trigger preemption because CMI's argument fails regardless of how that issue is resolved. The argument fails for two reasons. First, CMI's claim is at odds with Shaw ____ and Greater Washington Bd. of Trade, in which the Supreme Court ________________________________ explicitly contemplated state laws requiring the separate administration of workers' compensation plans without "relating to" existing ERISA plans. Greater Washington Bd. of Trade, 113 ________________________________ S. Ct. at 584-85; Shaw, 463 U.S. at 108. ____ Second, Maine's law, while having an economic impact on CMI, does not have an economic impact on the IAEA Plan itself. Clearly, any law that increases a company's cost of doing business can be said to affect that business's ability to provide benefits under its welfare benefit plan. This is not the same, however, as imposing burdens on the welfare benefit plan itself. The increased cost or administrative burdens imposed by the state law must have some connection to the covered ERISA plan before the preemption analysis can come into play. See United Wire, ___ _____________ Metal and Machine Health & Welfare Fund, v. Morristown Mem. ____________________________________________ _______________ Hosp., 995 F.2d 1181, 1193 (3d Cir. 1993) ("Where there is no _____ direct nexus between a state statute and ERISA plans, no effect on the manner of such plans' conducting business or their ability to operate in interstate commerce, statues have been upheld despite the fact that they may have the indirect ultimate effect of increasing plan costs."). In requiring CMI to provide separate coverage for -16- workers' compensation, Maine does not increase the operational expenses or input costs of the IAEA Plan,6 nor does it impose any additional administrative burdens, benefit requirements, or other obligations on the IAEA Plan. Maine's law may increase CMI's cost of doing business, but it does not affect the IAEA Plan's cost of providing benefits or costs of administration. Should CMI choose voluntarily to change its coverage under the IAEA Plan in response to Maine's law, we consider such a decision to constitute, at most, an effect of the law that is too "tenuous" and "remote" to warrant preemption. See Employee ___ ________ Staffing Servs., Inc. v. Aubry, No. C-92-4096, 1993 WL 83310 ______________________ _____ (N.D.Cal. Mar. 17, 1993), aff'd, No. 93-15482, 1994 WL 109731 _____ (9th Cir. 1994); cf. Mackey v. Lanier Collection Agency & Serv., __ ______ _________________________________ Inc., 486 U.S. 825, 831-32 (1988) (finding generally applicable ____ state garnishment law did not "relate to" ERISA covered plans even though the law might burden the administration of such plans); Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 145-46 (2d ___________________ ______ Cir.), cert. denied, 493 U.S. 811 (1989) (finding state escheat ____ ______ law did not "relate to" ERISA plans and noting that ERISA does not preempt many laws that have a minimal, indirect impact on ____________________ 6 In contrast, two cases that defendant relies upon, E-Systems _________ and Travelers, involve laws that increase the costs of plan _________ operation. See E-Systems, 929 F.2d at 1103 (finding that because ___ _________ the state tax in that case was collected from an ERISA covered plan, the "cost of the plan must therefore increase"); Travelers, _________ 813 F. Supp. at 1003 (finding "little doubt that the Surcharges at issue will have a significant effect on the commercial insurers and HMOs which do or could provide coverage for ERISA plans and thus lead, at least indirectly, to an increase in plan costs") (footnote omitted). -17- plan administration); Martori Bros. Distributors v. James- ____________________________ ______ Massengale, 781 F.2d 1349, 1358-59 (9th Cir.), cert. denied, 479 __________ ____ ______ U.S. 1018 (1986) (finding state unfair labor practices statute that required employers to pay damages based in part on fringe benefits employees would have received if employers had bargained in good faith did not "relate to" an ERISA plan). We find therefore that Maine's law does not "relate to" an ERISA covered plan and is not thereby preempted. Accordingly, the order of the district court is _______________________________________________________ affirmed. ________ -18-