**EMPLOYERS RESOURCE MANAGEMENT COMPANY, INCORPORATED; All–American Professional Services, Incorporated, Plaintiffs–Appellants,**

v.

**Charles G. JAMES, Chairman; Robert P. Joyner, Commissioner; William E. O'Neill, Commissioner; Lawrence D. Tarr, Chief Deputy Commissioner; Robert E. Dely, Deputy Commissioner; Susan B. Potter, Deputy Commissioner, Defendants–Appellees.**

**Director of California Department of Industrial Relations; State of Oklahoma, ex rel Dave Renfro, Commissioner of Labor; Marcia Davis, Administrator of the Workers Compensation Court, Amici Curiae.**

No. 94–1837.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1995.

Decided Aug. 15, 1995.

**ARGUED:** Allan Jacques Graf, Farmer & Ridley, Los Angeles, CA, for appellants. Teresa Creef Manning, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellees. **ON BRIEF:** Robert W. Ridley, Farmer & Ridley, Los Angeles, CA; John D. Epps, Steven W. Morris, LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA, for appellants. James S. Gilmore, III, Atty. Gen., Michael K. Jackson, Sr. Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, for appellees. John M. Rea, Chief Counsel, Vanessa L. Holton, Sr. Counsel, James D. Fisher, Counsel, Office of the Director–Legal Unit, Dept. of Indus. Relations, San Francisco, CA, for amicus curiae Dept. of Indus. Relations; Kayla A. Bower, Michael M. Sykes, Oklahoma Dept. of Labor, Oklahoma City, OK, for amicus curiae State of Oklahoma.

Before MURNAGHAN, WILLIAMS, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge MURNAGHAN and Judge MOTZ joined.

## OPINION

WILLIAMS, Circuit Judge:

This case involves the interaction between certain provisions of the Commonwealth of Virginia's Workers' Compensation statutory regime and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Employers Resource Management Company, Inc. (Employers Resource), and All–American Professional Services, Inc. (All–American), appeal from the district

court's entry of summary judgment in favor of the Workers' Compensation Commission of the Commonwealth of Virginia (the Workers' Compensation Commission).[1] *Employers Resource Management Co. v. James,* 853 F.Supp. 920 (E.D.Va.1994). On appeal, the parties present the following issue for our review: whether ERISA preempts those provisions of Virginia's Workers' Compensation statute that require Appellants to provide workers' compensation insurance through either a state-approved insurance carrier or through a self-insured plan meeting Virginia's financial solvency and funding requirements.[2] For the reasons that follow, we find that ERISA does not preempt the state provisions and affirm the decision of the district court.

## I.

The parties do not dispute the underlying facts in this action. On September 9, 1992, Employers Resource and All–American entered into a "co-employment agreement" (the Agreement), which was effective from September of 1992 through July of 1993. All–American is in the business of leasing employees on a temporary basis to its client employers. Employers Resource is in the business of supplying employees to its client employers, such as All–American, on a long-term basis, or what it commonly refers to as providing "co-employment services." The fundamental premise upon which the co-employment services business relationship exists is that, in exchange for a fee (typically set at a percentage of the client's payroll), Employers Resource assumed the responsibility of providing and administering employee welfare benefits of the employees supplied to All American's clients.

Under the Agreement, Employers Resource agreed to assume the payroll and benefit responsibilities for All–American.[3] In return, All–American agreed to pay Employers Resource a "co-employment fee" of 3.5% of gross payroll for the "co-employed" workers and an additional set-up fee of $25 per worker. As recognized by the district court, the advantages of a co-employment agreement between Employers Resource and All–American were three-fold: (1) Employers Resource would increase its profits through the increased numbers of employees being co-employed with clients; (2) All–American's clients would get the benefit of using the services of temporary employees without having to provide the benefits, taxes, and administration costs typically associated with employment; and (3) All–American no longer would have responsibility for providing and administering these costs for the employees.

Employers Resource established and maintained for All–American's employees an employee welfare benefit plan, designated as Plan No. 502 (the Plan). The Plan provided hospital and medical benefits, dental benefits, death benefits, and accidental death and dismemberment benefits.[4] Under paragraph 5

---

1. Employers Resource and All–American named the commission members as defendants in the complaint: Charles G. James, Robert P. Joyner, William E. O'Neill, Lawrence D. Tarr, Robert E. Dely, and Susan B. Potter. For simplicity, we refer to all of these defendants as simply the Workers' Compensation Commission.

2. We note that in addition to the above-stated parties, amicus curiae briefs have been filed by representatives of a number of state governments taking the same position as the Workers' Compensation Commission of Virginia. Representatives of Oklahoma and California filed amicus briefs; the Attorneys General of Idaho, Maine, Maryland, and New York joined the California brief.

3. Specifically, under paragraph 2 of the Agreement, Employers Resource was responsible for payment of the employee payroll, specified em-

ployee benefits, employer federal, state, and local taxes, and all required federal, state, and local employee payments or withholdings from wages. Furthermore, under paragraphs 3 and 8 of the Agreement, Employers Resource retained numerous management responsibilities for the co-employees, including hiring, training, and termination of employees and inspecting All–American's premises to insure safe workplace conditions. All–American was responsible for providing the co-employees with a workplace environment meeting applicable federal and state laws and complying with safety and health directives from Employers Resource or an insurer providing workers' compensation insurance for Employers Resource.

4. Employers Resource was the Plan administrator and a fiduciary of the Plan in accordance with section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) (1988). The Plan was self-funded,

of the Plan, Employers Resource also agreed, at its option, to provide either (1) workers' compensation insurance or (2) occupational injury and illness benefits under Employers Resource's employee welfare benefit plan. Regardless of the option chosen, the Plan required that the benefits provided to the employees "shall be equal to or exceed those required under the laws of the jurisdiction wherein [the] employee is injured." (J.A. 32.) Employers Resource chose to place its general coverage of workers' compensation claims within the occupational injury and illness benefits terms of the Plan. Section 1402(d) of the Plan provided that "this Plan will promptly pay when due the benefits required under the applicable Workers' Compensation Law." The Plan also provided that either party's decision to terminate the overall Agreement "shall not terminate Employers Resource's obligation to pay benefits for occupational illness or injury for the term required by applicable state law."[5] Pursuant to the terms of the Plan, if a claim for benefits was denied in whole or in part, a claimant could appeal the denial in writing to Employers Resource as the administrator of the Plan. If the appeal did not resolve the claim, the claimant had the right to resort to arbitration.[6] If the results of the arbitration were not satisfactory to the claimant, the Plan provided that the claimant could then institute a civil action in federal district court to recover benefits pursuant to § 502 of ERISA, 29 U.S.C. § 1132 (1988).

The underlying workers' compensation dispute in this case centers around James W. McNutt. When Employers Resource and All–American entered the Agreement, McNutt was a co-employee on a temporary work assignment to New York Carpet World, a business located in Virginia. On October 5, 1992, while on that assignment, McNutt suffered a work-related injury. Under the terms of the Plan, McNutt was entitled to receive the level of benefits which were required under Virginia's Workers' Compensation Act. McNutt filed a claim for occupational injury benefits with Employers Resource, which was denied in part. Instead of seeking arbitration as required by the Plan, McNutt responded to the denial by filing a claim for benefits with the Workers' Compensation Commission pursuant to the Virginia Workers' Compensation Act. The Workers' Compensation Commission began what was to become an unsuccessful six month attempt to assert jurisdiction over Employers Resource and All–American.[7] On October 6, 1993, after repeated attempts to gain compliance with its investigation, the Workers' Compensation Commission issued an order to the two companies to appear before it on October 28, 1993, to show cause why civil penalties should not be imposed for their failure to respond to the interrogatories.

On October 15, 1993, in response to the show cause order, Employers Resource and All–American filed a two count complaint against the Workers' Compensation Commission in the district court seeking declaratory and injunctive relief. Specifically, they sought a ruling that the Workers' Compensation Commission lacked any jurisdiction to adjudicate McNutt's workers' compensation claim. As expressed in the complaint, Employers Resource and All–American maintained that the Plan provided their co-employees with benefits exceeding the state mandated workers' compensation benefits, and, accordingly, any attempts by the Workers' Compensation Commission to assert jurisdiction were preempted by ERISA. The

---

receiving its funding from fees paid by All–American.

5. The assets of the Plan are held in trust as required by 29 U.S.C. § 1103(a) and, after a self-insured retention of $300,000, are reinsured by rated insurance companies for up to $20 million per occurrence.

6. The Plan allowed for representation by counsel at all times for the claimant but does not provide reimbursement for any legal expenses incurred to pursue a claim.

7. For example, on May 7, 1993, the Workers' Compensation Commission directed Employers Resource and All–American to respond to interrogatories. The two companies refused to respond, asserting that ERISA preempts the jurisdiction of the Workers' Compensation Commission. On September 14, 1993, the Workers' Compensation Commission issued an order directing Employers Resource and All–American to respond to the interrogatories or otherwise be held in contempt.

Workers' Compensation Commission, on the other hand, took the position that various provisions of the state code requiring employers to provide security for the payment of occupational injury and illness benefits are not preempted by ERISA and functionally require Employers Resource to provide a separate workers' compensation package in compliance with Virginia law.

■ The parties submitted cross-motions for summary judgment with the district court. The district court entered summary judgment for the Workers' Compensation Commission on two grounds. First, it reasoned that the Virginia statutory provisions did not "relate to" an employee benefit plan, and, therefore, were not preempted under § 514(a) of ERISA, 29 U.S.C. § 1144(a) (1988). Second, in the alternative, the district court held that the Virginia statutory provisions at issue fell within an ERISA exemption, § 4(b)(3), 29 U.S.C. § 1003(b)(3) (1988), which does not preempt those plans that are "maintained solely for the purpose of complying with applicable workmen's compensation laws." On June 23, 1994, Employers Resource and All–American filed a timely notice of appeal from the district court's entry of summary judgment.[8]

■ We review the district court's entry of summary judgment *de novo*. *Nguyen v. CNA Corp.*, 44 F.3d 234, 236–37 (4th Cir. 1995).

## II.

■ The primary question we confront in this case is whether ERISA preempts certain Virginia statutory and regulatory workers' compensation provisions requiring employers to provide specified security for the payment of occupational injury and illness benefits. The Virginia Workers' Compensation Act, § 65.2–100, *et seq.*, establishes the Commonwealth's workers' compensation regime. The statute and supporting regulations specifically provide that all Virginia employers with three or more employees regularly in service must offer workers' compensation benefits through one of the following three methods: (1) purchasing a policy of workers' compensation insurance from a carrier licensed to write such policies by the Virginia State Corporation Commission (VSCC); (2) receiving a certificate from the Workers' Compensation Commission authorizing the employer to be an individual self-insurer; or (3) being a member in good standing of a group self-insurance association that the VSCC has licensed. Va.Code § 65.2–801(A)(1)–(3). The parties agree that this statutory framework effectively requires an employer with Employers Resources's financial structure to establish a separately administered plan for workers' compensation benefits. The parties further agree that Employers Resource has failed to meet these statutory requirements.[9]

8. On March 7, 1995, the parties to this appeal filed a letter apprising this Court that, subsequent to the filing of the appellate briefs, McNutt withdrew his claim for workers' compensation benefits and, in response, the Workers' Compensation Commission entered an order allowing him to withdraw his claim without prejudice to his right to refile his claim within the applicable statutory period. The Workers' Compensation Commission's order also vacated its prior show cause order directed to Employers Resource and All–American. Both parties, however, maintain that this Court should address the issues in this case because the dispute between the parties (and the federal and state statutory regimes) continues to exist and also because the nature of the underlying claims are capable of repetition but prone to evading review. In support of this, the parties submitted extensive statistics concerning the short duration of workers' compensation claims and the ongoing nature of the dispute between the parties. We agree and conclude that McNutt's withdrawal of his claim without prejudice does not render this action moot.

9. As the district court correctly pointed out, specific examples of the manner in which Employers Resource, as a self-insurer, has failed to comply with Virginia statutory and regulatory requirements including completion of an employer's application for individual self insurance and, following approval of the application, submission to the Workers' Compensation Commission of a corporate surety bond, issued by a licensed Virginia bond writer, the minimum amount of which must be the larger of $750,000 or two times the annual incurred costs (including reserves) for workers' compensation claims. Va.Regs. 408–20–01 §§ 6A and 6F. Employers Resource's Plan assets are held in trust and reinsured by rated insurance companies for up to $20 million per occurrence above a self-insured retention of $300,000. This does not satisfy the above-stated requirements of Virginia statutory and regulatory law.

The disagreement among the parties is, thus, limited to whether these provisions are preempted by ERISA, thereby enabling Employers Resource to provide its own workers' compensation insurance scheme beyond the reach of the Workers' Compensation Commission's enforcement powers.

We conclude from the text of the relevant statutes, guidance from Supreme Court and this Court's discussions of ERISA preemption, and persuasive reasoning from other circuits, that ERISA does not preempt the Virginia's workers' compensation scheme requiring employers to provide security for the payment of occupational injury and illness benefits. In doing so, we join the growing ranks of our sister circuits that have recently addressed the issue. *E.g., Contract Services Employee Trust v. Davis,* 55 F.3d 533 (10th Cir.1995) (concluding that Oklahoma's workers compensation regime, as it relates to temporary workers' benefits, was not preempted by ERISA); *Combined Management, Inc. v. Superintendent of Bur. of Ins.,* 22 F.3d 1 (1st Cir.1994) (same); *Employee Staffing Services, Inc. v. Aubry,* 20 F.3d 1038 (9th Cir.1994) (same).

In order to resolve this case, we must take a close look at the language of ERISA's preemption provision, § 514(a). The general rule of § 514(a) is that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ... not exempt under [§ 4(b)(3)] of this title." 29 U.S.C. § 1144(a). The plain language of this provision directs us to find that even if a law generally relates to ERISA, it is not preempted if it is exempt under § 4(b)(3). Section 4(b)(3) reads as follows:

> (b) The provisions of this subchapter shall not apply to any employee benefit plan if—
>
> \* \* \* \* \* \*
>
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws....

29 U.S.C. § 1003. Therefore, we must determine whether Employers Resources's Plan "is maintained solely for the purpose of complying with applicable workmen's compensation laws."

■ Appellants propose a narrow interpretation of this language, based on Congress's use of the word "solely" to modify the above-stated operative phrase, that would effectively preempt any plan that combines elements of ERISA and state workers' compensation laws. In effect, Appellants argue that ERISA preempts Virginia from directing employers to keep their workers' compensation coverage outside of their independent ERISA plan. We disagree. ERISA does not preempt plans; it preempts laws. When the state law only requires an employer to create a separate workers' compensation plan, as in this case, the law necessarily relates to an employee benefit plan "solely for the purpose of complying with applicable workmen's compensation laws."

The Ninth Circuit has confronted and rejected Appellants' textual analysis in a case presenting essentially the same facts as here. In *Aubry,* Employee Staffing Services created an ERISA plan that included coverage for work-related injuries, as well as medical, health, and life insurance benefits. *Aubry,* 20 F.3d at 1039. Like Virginia, California required the employer in *Aubry* "to secure payment of workers' compensation either by purchasing workers' compensation insurance from a state-approved carrier, or self-insuring under a plan approved" by a California labor administrative body. *Id.* at 1041. That court noted:

> Syntactically, the preemption of "laws" and exemption of "plans" might be construed to place the power to exempt in the employer's hands, when it adopts a plan, instead of the state legislature's hands, when it promulgates laws. But a construction which attributes a rational purpose to Congress makes this locus of power unlikely, because it would accidentally allow employers to avoid the century-old system of workers' compensation.

*Id.*[10] In short, Virginia's laws are not preempted simply because they may have the

---

10. The Ninth Circuit's position is supported by    what little guidance the legislative history of

incidental effect of requiring employers to carry workers compensation insurance separate from a more convenient ERISA plan.

This analysis is strongly supported by the Supreme Court's reasoning in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 106–109, 103 S.Ct. 2890, 2904–06, 77 L.Ed.2d 490 (1983). In *Shaw*, the Court confronted another type of state law covered by the exemption in § 4(b)(3): disability insurance. *See* 29 U.S.C. § 1003(b)(3) (exempting a plan "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability laws"). A New York disability law required employers to pay weekly benefits to their disabled employees the lesser of $95 per week or one-half of the employee's average weekly wage. *Id.* at 89, 103 S.Ct. at 2896. Various employers filed suit, arguing that application of the law to comprehensive benefit plans was preempted by ERISA. The Supreme Court held that such a law was not preempted by ERISA because it related to exempt employee benefit plans maintained solely for the purpose of complying with applicable disability laws under § 4(b)(3). *Id.* at 106–08, 103 S.Ct. at 2904–06.

In our case, Appellants take the position that "[w]hat the Supreme Court held in *Shaw* was that ERISA offered the employer a trade-off: freedom from state funding and administrative requirements with respect to workers' compensation and disability benefits in exchange for providing to employees benefits in addition to those mandated by such state laws." Appellants' Brief at 45–46. As the Court's reasoning in *Shaw* makes clear, however, the proper analysis cuts in the opposite direction:

> Congress surely did not intend, at the same time it preserved the role of state disability laws, to make enforcement of those laws impossible. A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit. Such a plan would be exempt under § 4(b)(3).
>
> * * * *
>
> In other words, while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply.

*Shaw*, 463 U.S. at 108, 103 S.Ct. at 2905–06. Appellants respond to this passage by arguing, in essence, that the Supreme Court could not have meant what the opinion states. Nevertheless, we agree with the district court and our sister circuits that have held there is no meaningful distinction contained in the text or structure of § 4(b)(3) to justify treating the disability law exemption under the provision any differently than that of the workers' compensation exemption. *Aubry*, 20 F.3d at 1041 ("We see no reason to distinguish workers' compensation plans from disability plans, since both are controlled by identical language in the same subsection of the ERISA statute, and the same reasons apply to both."); *Combined Management*, 22 F.3d at 5 ("Maine's workers' compensation law falls squarely within the dictates of *Shaw*.").

Appellants also would have us take the position that the Supreme Court recently altered its *Shaw* analysis in *District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513

ERISA has to offer on the issue. While not specifically addressing the question, the legislative history surrounding ERISA's passage does indicate a great reluctance on the part of Congress to preempt the states' fundamental control over workers' compensation laws, as the Appellants would have us hold. In 1972, before the initial passage of ERISA, the National Commission on State Workmen's Compensation Laws, a commission created by Congress to conduct an overarching assessment of the system and the need for federal intervention, issued a report finding numerous shortcomings in the state laws but recommending that the workers' compensation system remain controlled by the states. In short, it appears that Congress did not intend to have uniform requirements for state workers' compensation plans because it did not intend the workers' compensation plans instituted to comply with those programs to be covered by ERISA at all.

(1992). We disagree. In *Greater Washington*, the Court analyzed whether ERISA preempted a District of Columbia workers' compensation provision requiring employers who provide health insurance for their employees to provide equivalent health insurance coverage for injured employees eligible for workers' compensation benefits. *Id.* —— U.S. at ——, 113 S.Ct. at 582. The Court concluded that such a workers' compensation provision "relate[ed] to" an ERISA plan sufficiently to trigger preemption because the legislation specifically referred to welfare benefit plans that were regulated by ERISA. As the Court made clear, it was on "that basis alone" that the provision was preempted. *Id.* at ——, 113 S.Ct. at 583. Here, on the other hand, there is no direct reference to an ERISA plan within the state legislation, nor is there any other basis which triggers ERISA's preemption clause.

Finally, our decision today is wholly consistent with our prior decision applying the workers' compensation exemption of § 4(b)(3): *PPG Indust. Pension Plan A(CIO) v. Crews*, 902 F.2d 1148 (4th Cir. 1990). In *PPG*, we addressed "whether ERISA preempts a state statute that purportedly prohibits a company from deducting the amount of pension benefits previously paid to a retiree from the amount of the retiree's subsequent retroactive award of workers' compensation." *Id.* at 1149. Looking to the general preemption provision in § 514(a) and the workers' compensation exemption in § 4(b)(3), we reasoned that the integration provisions were sufficiently related to an ERISA plan to trigger preemption under *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). *PPG*, 902 F.2d at 1150–51. We further stressed that the preemption analysis does not simply turn on the label of workers' compensation statute, instead the law was preempted "because it relates to a matter of pension benefit integration within ERISA's exclusive province." *Id.* Unlike the integration provisions discussed in *PPG*, here we instead deal with the ability of the state to "force the employer to choose between providing" workers' compensation benefits "in a separately administered plan and including the state-mandated benefits in its ERISA

plan." *Shaw*, 463 U.S. at 108, 103 S.Ct. at 2906.

■ In short, nothing in ERISA prevents Virginia from functionally requiring an employer to maintain a plan "solely for the purpose of complying with applicable workmen's compensation laws." Accordingly, we conclude that the Virginia workers' compensation laws in question are free from ERISA's statutory preemption.

### III.

There is little question that the scope of ERISA preemption can be breathtaking in its effect on the field of employee benefits. But even the preemptive scope of ERISA has its limits, and this is one. The judgment of the district court is therefore affirmed.

*AFFIRMED.*