Bevill v. Sprint                          04-CV-406-SM   04/25/05
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Robert T. Bevill,
        Plaintiff

        v.                              Civil No. 04-cv-406-SM
                                        Opinion No. 2005 DNH 070
Sprint Communications Co., L.P.,
        Defendant


                          **O R D E R**


        Pro se plaintiff, Robert Bevill, brings this diversity

action against Sprint Communications Company, L.P. ("Sprint"),

seeking damages for alleged acts of fraud, negligent

misrepresentation, and theft of proprietary information and trade

secrets.  Sprint moves to dismiss all claims in Bevill's

complaint, asserting that he has named the incorrect defendant,

Bevill lacks standing to assert those claims, and, in any event,

even if the proper party were advancing those claims, they are

barred by principles of res judicata and collateral estoppel.

Bevill objects.  For the reasons set forth below, Sprint's motion

to dismiss is granted.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law. See Resolution Trust Corp. v.

<u>Driscoll</u>, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted). <u>See also</u> <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987).

Here, in support of its motion to dismiss, Sprint relies on a number of documents that were filed in substantially similar litigation initiated by Bevill in the United States District Court for the District of Kansas (e.g., the complaint, various pleadings, the transcript of a judicial hearing, and a court order), as well as filings made in Bevill's personal bankruptcy proceeding. Typically, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(b). There is, however, an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

3

<u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted).  <u>See also</u> <u>Beddall v. State St. Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998).  Since Bevill does not dispute the authenticity of the documents on which Sprint relies, the court may properly consider those documents without converting Sprint's motion into one for summary judgment.


## Background

Beginning in late 1998, Bevill began negotiating with Sprint (or one of its affiliates or subsidiaries) to supply certain services to assist Sprint (or, again, one of its affiliates or subsidiaries) in providing Internet access to military personnel on various military bases in the United States.  Subsequently, on August 1, 2000, The Bevill Company, a Delaware corporation ("BC-Delaware"), entered into a "Master Services Agreement" with Sprint/United Management Company, a Kansas Corporation ("SUMC").  Bevill executed that contract on behalf of BC-Delaware, in his capacity as president and chief executive officer.  <u>See</u> Exhibit 5 to defendant's memorandum.

4

The record suggests that, before the contract was executed, BC-Delaware had been dissolved by the Delaware Secretary of State. Accordingly, when Bevill signed the contract with SUMC, ostensibly on behalf of BC-Delaware, that corporation was no longer in existence. In an effort to explain that situation, Bevill poses two somewhat conflicting scenarios. First, he claims to have executed the contract with the intent to assign all rights under it to a yet-to-be-created company by the same name, which he intended to incorporate (and subsequently did incorporate) in the State of New Hampshire - The Bevill Company, Inc. ("BC-New Hampshire"). The record is, however, devoid of any suggestion that Bevill and/or BC-Delaware ever assigned his/its rights under the contract to BC-New Hampshire.

Alternatively, Bevill suggests that the contract simply contained a typographical error and improperly recited the state of incorporation for the Bevill Company as Delaware, rather than New Hampshire. In other words, says Bevill, the contract identified a Delaware company that once existed, but had been dissolved, when it should have identified a yet-to-be created New Hampshire Company. The United States District Court for the

5

District of Kansas appears to have adopted this interpretation of the relevant events.

> At the time of the Agreement's execution, [BC-Delaware's] incorporation was inoperative and, in effect, the company was nonexistent. Also at that time, Mr. Bevill was acting as the incorporator or promoter of the to-be-formed New Hampshire corporation. True to the intent, a few weeks later Mr. Bevill incorporated [BC-New Hampshire] under the laws of New Hampshire. [BC-New Hampshire] then undertook acts consistent with performance under the Agreement, including leasing equipment and installing circuitry on military bases. The court finds that [BC-New Hampshire] ratified and adopted the contract by undertaking a portion of the performance thereunder.

The Bevill Company, Inc. v. Sprint/United Mngt. Co., 2004 WL 2278582 (D. Kan. Sept. 2, 2004).

Between August 1, 2000 and November 2, 2001, Bevill claims that he (presumably as an employee or agent of BC-New Hampshire) provided SUMC with services valued at more than $500,000.00. On October 23, 2001, SUMC informed Bevill that it was terminating its contract with BC-Delaware (the corporate entity with which it believed it had contracted). When SUMC subsequently learned that BC-Delaware was not in existence at the time Bevill executed the contract on its behalf, SUMC notified Bevill of that additional

6

basis for terminating the contract.  <u>See</u> Exhibit 1 to defendant's memorandum.

Approximately one year later, on November 1, 2002, Bevill says he filed suit against SUMC in the United States District Court for the District of Kansas (the "Kansas case").[1]  In that suit, BC-New Hampshire alleged that SUMC breached the parties' contract by improperly terminating it.  In the alternative, BC-New Hampshire sought damages on a quantum meruit theory of recovery.  The court concluded that SUMC had terminated the contract in compliance with its termination provisions, and held that BC-New Hampshire was not entitled to damages under a quantum meruit theory.  Accordingly, it denied BC-New Hampshire's request for injunctive relief and granted SUMC's motion for summary judgment.  That decision is now on appeal to the Court of Appeals for the Tenth Circuit.

---

[1]      That suit was actually brought by BC-New Hampshire, an entity of which Bevill says he is the "alter ego."  The fact that Bevill says that he, rather than the corporation, "brought suit" in Kansas, illustrates one of the pervasive problems in this case: Bevill's apparent confusion between his own legal rights and obligations and those of the distinct corporate entities he has created.

7

Undeterred, Bevill filed this litigation, alleging that Sprint, while not a party to the contract between SUMC and the Bevill Company, was the real party in interest. Moreover, Bevill claims that two Sprint employees were active in the contract negotiations and negligently misrepresented material facts and fraudulently induced him (presumably on behalf of one of the two corporate entities known as the Bevill Company) to enter into the contract with SUMC. Bevill says he discovered the fraud on November 9, 2001 (approximately one week after he filed the Kansas case) and, therefore, asserts that his current claims have been brought within the pertinent limitations period.

Sprint, on the other hand, asserts that Bevill has named the wrong defendant in this suit, pointing out that it was never a party to the underlying contract. Moreover, Sprint asserts that any claims arising out of the contract (or its formation) belong to the corporate entity that actually entered into the contract, not Mr. Bevill himself. Finally, says Sprint, in light of the prior Kansas litigation, the claims Bevill seeks to advance in this case are barred by the doctrine of res judicata and principles of collateral estoppel.

8

**Discussion**

Despite Bevill's assertion that he is the "alter ego" of both the New Hampshire and Delaware corporations, he lacks authority to pursue claims in his individual capacity that belong to those corporate entities. If, as Bevill claims, one of those corporations was fraudulently induced to enter into the contract with SUMC, then the corporation itself, and not Bevill, is the proper party to bring suit. As the Court of Appeals for the First Circuit has observed, "[T]he [alter ego] doctrine is thought to be equitable in nature. Consequently, it can be invoked only where equity requires the action <u>to assist a third party</u>." <u>Intergen N.V. v. Grina</u>, 344 F.3d 134, 149 (1st Cir. 2003) (citation and internal punctuation omitted) (emphasis supplied). <u>See also</u> <u>Mass. Carpenters Cent. v. A.A. Bldg. Erectors, Inc.</u>, 343 F.3d 18, 21-22 (1st Cir. 2003) (observing that the alter ego doctrine is "a tool to be employed when the corporate shield, if respected, would inequitably prevent a party from receiving what is otherwise due and owing <u>from the person or persons who have created the shield</u>.") (emphasis supplied).

9

Here, by asserting that he is the "alter ego" of the New Hampshire and Delaware corporate entities, Bevill seems to suggest that he has disregarded the corporate form to such a degree that it would, under appropriate circumstances, be lawful to pierce the corporate veil(s) and impose upon him personal liability for what would traditionally be viewed as corporate obligations. That may or may not be accurate. But, this much can be said with confidence: Bevill cannot invoke the alter ego doctrine in an effort to personally assert claims or causes of action which, in reality, belong to the corporation(s). See, e.g., McCarthy v. Azure, 22 F.3d 351, 363 (1st Cir. 1994) ("As appellant is not even arguably an innocent third party disadvantaged by someone else's blurring of the line between a corporation and the person who controls it, but, rather, is himself the one who is claimed to have obscured the line, he cannot be permitted to use the alter ego designation to his own behoof.").

So it is in this case. As the party who admittedly blurred the line between the corporations and himself, Bevill cannot invoke the corporate alter ego doctrine in an effort to impose

10

liability on Sprint (or its employees, corporate parents, or affiliates).  In short, Bevill lacks standing to assert claims on behalf of either BC-Delaware or BC-New Hampshire.  Accordingly, defendant's motion to dismiss must be granted.

Parenthetically, the court notes that even if Bevill were permitted to amend his complaint to add a party-plaintiff at this point, such an amendment would be futile.  Presumably, the way to cure the defect in his complaint would be to add as plaintiffs one or both of the corporate entities over which he exercises control (to the extent they are still in existence).  But, if he were to do so, the claims to be asserted by those entities (e.g., fraudulent inducement and negligent misrepresentation) would be barred by principles of collateral estoppel and res judicata, given the outcome of previous litigation in the United States District Court for the District of Kansas.

## Conclusion

For the forgoing reasons, as well as those set forth in defendant's memorandum of law, defendant's motion to dismiss

11

(document no. 11) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        Chief Judge

April 25, 2005

cc:  Robert T. Bevill, pro se
     Mark D. Hinderks, Esq.
     R. Matthew Cairns, Esq.